Rosalie Ellen BAUER, et al., Appellants,

v.

Chester Allen RIGGS, Jr., Appellee.

No. 2–82–099–CV.

Court of Appeals of Texas,
Fort Worth.

March 17, 1983.

Rehearing Denied April 21, 1983.

Godfrey, Decker, McMackin, Shipman, McClane & Bourland and Warren W. Shipman, III, Thomas L. Farris, Fort Worth, for appellants.

Law Offices of Earl Rutledge and Earl Rutledge, Fort Worth, for appellee.

Before HUGHES, JORDAN and ASH-WORTH, JJ.

## OPINION

JORDAN, Justice.

This is an appeal from a judgment adverse to appellants in a declaratory judgment suit brought by appellee to establish his ownership interest in twelve lots and duplexes located in the Linwood Addition in

Fort Worth, Texas. The suit was brought by appellee for declaratory judgment determining his partnership interest in the twelve lots, for an accounting between him and the surviving widow and estate of Everett L. Bauer, deceased, and for other relief.

After jury trial the trial court entered a judgment in favor of appellee, finding that a partnership had existed between appellee and Everett L. Bauer, deceased, until Bauer's death, and setting aside the sale of the twelve lots from appellant Rosalie Ellen Bauer, independent executrix of the estate of Everett L. Bauer, to Thomas L. Farris and Ivey Lee Rhoades. (Mrs. Rhoades was mispelled as "Rhodes" throughout the trial court record.)

Mrs. Bauer and Thomas L. Farris alone appeal. Mrs. Rhoades did not appeal from the trial court judgment.

The cause is reversed and remanded in part and reversed and rendered in part.

Because of the complex nature of this case, and the somewhat confusing fact situation revealed by the record, it is believed that a fairly detailed recitation of the history and underlying facts in this case is mandated.

Everett L. Bauer, deceased, operated an industrial tool and automobile supply business, under the name of the Bauer Company, until his death on September 4, 1976. Appellee, Chester Allen Riggs, Jr., was an employee of Everett L. Bauer and the Bauer Company from about 1946 or 1947 until November, 1961, when he left Bauer and the Bauer Company. Prior to Riggs' separation from the Bauer Company, he and Everett L. Bauer, along with a third party, formed the Wardside Corporation, for the purpose of acquiring nine duplex rental units in the Linwood Addition in Fort Worth. The corporation was capitalized by $2,500.00 borrowed by Everett L. Bauer. Appellee Riggs' contribution to the incorporation of Wardside Corporation was his payment of the corporation charter fee of $25.00, a few hundred dollars of the closing costs in the acquisition of the nine duplexes, and the performance of some labor.

Lots 5, 8, 9, 10, 11, 12, 13, 14 and 15, block 9, Linwood Addition to the City of Fort Worth were, on December 21, 1960, acquired by Everett L. Bauer, who executed purchase money notes and deeds of trust securing them to Mutual Savings. On January 10, 1961, Bauer conveyed these nine lots and duplexes to Wardside Corporation, subject to the notes he had executed, so that only Bauer had any liability with respect to these notes. Title to the nine lots and duplexes remained in the Wardside Corporation, and later Wardside Company, from January 10, 1961, until December 10, 1976, when these nine lots, plus three others which will be discussed later, were conveyed by appellant Rosalie Ellen Bauer, as independent executrix, to Thomas L. Farris and Ivey Lee Rhoades.

Wardside Corporation never adopted any by-laws, never had an organizational meeting, nor did it issue any stock. On July 17, 1961, the right of Wardside Corporation to do business was forfeited, and on March 22, 1962 its charter was forfeited for failure to pay franchise tax. Thereafter, Wardside was operated as Wardside Company by Everett L. Bauer alone, appellee Riggs having left the employment of Bauer in November, 1961.

According to his testimony at trial, from the time these nine lots and duplexes were acquired by the Wardside Company until he left the employment of the Bauer Company in November of 1961, Riggs did all of the maintenance and repair work on the duplexes, and, according to his testimony, continuously asserted an undivided one-half interest in the nine lots originally acquired by the Wardside Corporation. However, although there is testimony from third persons to the effect that Riggs claimed a partnership interest in these nine lots and that from the period of 1961 until 1976 these other people heard both Riggs and Everett L. Bauer declare that Riggs was a partner in the ownership of these lots, the fact is that the record shows no actual participation in the operation or maintenance of the nine duplexes on the part of Riggs after 1961.

Appellee did not openly assert any interest in the ownership of these nine duplexes, by letter, suit, or otherwise, until late 1976, when these nine lots, plus three others previously acquired by Everett L. Bauer, were deeded by appellant Rosalie Ellen Bauer, independent executrix of the estate of Everett L. Bauer, to Thomas L. Farris and Ivey Lee Rhoades.

In late 1961 and early 1963, Everett L. Bauer acquired three more lots and duplexes, lots 1, 2 and 3, in Linwood Addition by deeds dated December 6, 1961, December 11, 1961, and February 8, 1963. Bauer alone executed purchase money notes and deeds of trust covering these lots and title to these three duplexes at all times remained in Bauer or his estate until they were conveyed by appellant Rosalie Ellen Bauer to Thomas L. Farris and Ivey Lee Rhoades on December 10, 1976. These three lots, acquired by Bauer in 1961 and 1963, will hereafter be referred to as the "last three lots" or simply "the three lots".

Prior to the sale from Mrs. Bauer to Farris and Rhoades on December 10, 1976, appellee put appellants on notice that he was claiming a partnership interest in all twelve lots and duplexes. On December 27, 1976, he filed this suit asserting such interest.

Appellants pled, and it was their position on trial of this case, that on December 30, 1960, appellee Riggs and Everett L. Bauer, deceased, executed an instrument whereby appellee relinquished any claim he once had in the first nine duplexes and whereby Bauer agreed to accept the interest and obligations of Riggs. Appellants also contended that this agreement was supported by one dollar paid to Riggs by check dated March 31, 1961, and by Bauer's assumption of Riggs' obligations in Wardside Corporation.

Appellants further contend that appellee Riggs never did have any interest in the "last three lots".

Trial was to a jury which found, in answer to special issues, that appellee did not execute the document dated December 30, 1960 and that Everett L. Bauer, deceased, after acquiring title to the "last three lots", had made payments on them out of rental income from the original nine lots and that 90–95 percent of such payments had been made out of such money.

After the trial, the court appointed an auditor to make certain findings based upon the assumption that the entire twelve duplex operation was a partnership. Under such assumption, the auditor found that upon liquidation of the alleged partnership and sale of the duplexes, a capital contribution by Bauer, and certain loans to the partnership by Bauer, should be reimbursed to appellant Rosalie Ellen Bauer, independent executrix, and that the remaining sales proceeds should be shared equally by appellee and the Bauer estate. The auditor also found that no rental income from the original nine duplexes had been applied to the original acquisition of the three duplexes, and that no determination could be made as to how much of such rental income, if any, was applied to payments made on the three duplexes after their original acquisition. Finally, the auditor found that Farris and Rhoades had made a profit of $101,342.00 in profits from operating the duplexes between December 10, 1976 and December 31, 1981.

Based upon the jury findings and the auditor's report, the trial court, on March 9, 1982, rendered judgment that appellee had a 50 percent interest *in all twelve duplexes,* that the attempted sale on December 10, 1976 by Rosalie Ellen Bauer, individually and as independent executrix of the estate of Everett L. Bauer, deceased, to Thomas L. Farris and Ivey Lee Rhoades, was null and void, and that the duplexes be sold. The judgment also provided that the independent executrix, appellant, be reimbursed out of the sale proceeds for Everett L. Bauer's capital contributions and loans to the partnership, and that the remaining sales proceeds be divided equally between appellee and appellant Rosalie Ellen Bauer. The judgment further provided that the partnership should recover from the defendants Farris and Rhoades the $101,342.00 in profits they made from operating the duplexes.

The appeal is based on seventeen points of error. The primary point of error, and the principal issue on which this case has to be reversed, is found in appellants' first point of error to the effect that there was error in the admission of appellee Riggs' testimony that he did not sign the December 30, 1960 release of his interest in the original nine duplexes. It is appellants' contention that such testimony was violative of the Dead Man's Statute, Tex.Rev. Civ.Stat.Ann. art. 3716 (1926). We agree with this conclusion.

The controlling issue in this whole case was whether or not appellee Riggs and Everett L. Bauer had executed the December 30, 1960 agreement whereby Riggs released all of his interest in the original nine duplexes and Bauer agreed to assume Riggs' obligations concerning those duplexes. This issue was hotly contested, and while there was other circumstantial evidence, some of it of a negative character by third parties, that he had not signed the document, his testimony that he had not executed the instrument was the only direct testimony on the issue.

Appellee testified, over a Dead Man's Statute objection by appellant Bauer, that he had never seen the original of the December 30, 1960 document until the first day of trial of this case, and that he had absolutely not signed that instrument. Appellee concedes in his brief that his testimony denying execution of the release of claim was not admissible against Mrs. Bauer, but asserts that it was admissible as to Farris and Rhoades. He then takes the position that the error in admitting the testimony as to Mrs. Bauer, as well as to Farris and Rhoades, was waived because there was no request for an instruction by the trial court to limit the admission of the denial testimony to Farris and Rhoades only. We do not agree with this contention.

■ · A denial of alleged transactions with the decedent is prohibited by the Dead Man's Statute just as much as affirmative testimony concerning transactions with a decedent is prohibited. *Royall v. Holloway,* 118 Tex. 1, 299 S.W. 862 (Tex.Comm'n App. 1927, opinion adopted); *Hazelwood v. Pennybacker,* 50 S.W. 199 (Tex.Civ.App.1899, no writ); 8 A.L.R. 1094–1124 (1920); and *Burris v. Levy,* 302 S.W.2d 171 (Tex.Civ. App.—San Antonio 1957, writ ref'd n.r.e.). As we have stated, appellee apparently agrees with this proposition and concedes that such testimony was inadmissible as to Mrs. Bauer but not as to Farris and Rhoades. The trial court apparently agreed with appellee's theory, holding that the negative testimony was admissible against Farris and Rhoades, and since there was no request to so limit it, that it was also admissible against Mrs. Bauer. The trial court apparently reasoned that the causes of action against Mrs. Bauer on the one hand and Farris and Rhoades on the other, were severable, and that Mrs. Bauer waived her Dead Man's Statute objection by failing to request the court to limit the instruction to Farris and Rhoades. In this we think the able trial court erred.

■ The basic question here is whether the effect of the prohibited testimony can be limited to the interest of the parties not covered by the Dead Man's Statute. This depends on whether or not the issue or question involving those covered and those not covered by the Dead Man's Statute are separable or severable. The cases hold that where the transaction relates to an issue that is necessarily determinative of the rights of a party covered by the statute, the testimony must be excluded even though the same issue is determinative of the rights of a party not covered by the Dead Man's Statute. In this case, the transaction testimony bore directly upon the issue determinative of Mrs. Bauer's right as independent executrix to convey the Wardside property to Farris and Rhoades. The same issue was also determinative of the right of Farris and Rhoades to retain the property, because this right was a derivative right, one obtained from and dependent upon the right of Mrs. Bauer to convey the property. The right of Mrs. Bauer to convey the property, and the right of Farris and Rhoades to retain the property, are thus not severable. It would be impossible to limit the effect of

the testimony of Riggs simply to the interest of Farris and Rhoades. From its nature, the testimony necessarily affects the interests of both Mrs. Bauer as independent executrix, grantor, and Farris and Rhoades, grantees, and its effect is incapable of limitation.

The leading case on this question is *Spencer v. Schell,* 107 Tex. 44, 173 S.W. 867 (Tex.1915). In this case the defendant executed certain notes payable to plaintiff's husband and executed a deed of trust upon certain real estate to secure the notes. After the death of plaintiff's husband, she brought suit on the notes and for foreclosure of the deed of trust lien. The suit was brought by her in two capacities, first, as the heir of her husband, and, second, as community survivor. The defendant attempted to testify that payment of the notes had been made to plaintiff's husband. The trial court excluded the testimony upon the objection that it violated the Dead Man's Statute. The Supreme Court held that the trial court had properly excluded the testimony, even though the testimony was admissible against plaintiff in her capacity as community survivor. The court stated, at 868:

As has been noted, Mrs. Schell was the plaintiff in the suit in a dual capacity; that is, as the heir of her husband and in her own right as community survivor. As a party plaintiff in her own right, the testimony was admissible against her. As against her in the capacity of the heir of her husband, it was inadmissible under the statute. If the suit were one for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible, as, for illustration, where one sues in his own right and is joined by heirs, each seeking the recovery of a separate interest, the question would not be one of difficulty.... But here the interests upon which the recovery is sought are not severable. They are joined in the same person, and the right to their enforcement constitutes an indivisible cause of action. *It would be impossible, for instance, as a practical proposition, to limit the effect of this testimony simply to the interest in these notes of Mrs. Schell as the community survivor. It was not proposed to be shown by the proffered testimony that the payments to which it related were made to Wallace Schell otherwise than upon the notes generally. There could be, accordingly, no warrant for applying them solely to either Mrs. Schell's community interest or her inherited interest. From its nature, the testimony would necessarily affect both interests, and its effect is incapable of limitation.* [Emphasis added.]

The holding of *Spencer v. Schell, supra,* is not limited to situations where one person sues in a dual capacity. In *Colvard v. Goodwin,* 24 S.W.2d 786 (Tex.Civ.App.—Eastland 1930, writ dism'd), the plaintiffs were a widow and son who sued the defendant Colvard to cancel a deed executed by the widow and her deceased husband on the theory that the defendant used fraud and undue influence to induce the execution of the deed, and that the grantors lacked mental capacity to execute the deed. The jury answered issues in favor of the plaintiffs with respect to undue influence, fraud and mental incapacity, and the trial court rendered judgment for the plaintiff on the verdict. On appeal, the defendant urged that the trial court had erred in sustaining objections to testimony offered by the defendant relating to transactions between the deceased husband and the defendant wherein the deceased husband had allegedly agreed to devise the 180 acres to the defendant in exchange for certain services to be rendered by the defendant. The Court of Civil Appeals recognized that the evidence was theoretically admissible against the widow, who was suing in her own right, and inadmissible against the son, who brought suit as an heir. The court agreed with the trial court, however, that the testimony was totally inadmissible, *even though the objection to the testimony was not accompanied by a motion to restrict the testimony to the interest of the widow.* The Court of Civil Appeals in *Colvard,* at 793,

said that it considered the entire question of limitation of prohibited testimony, so far as it affects the case before it, as being governed by the decision of the Supreme Court in *Spencer v. Schell, supra:*

> In the opinion in that case Mr. Justice Phillips states that the rule announced in the cases above cited would apply in a suit for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible. But, the evidence would be inadmissible in a case in which, as a practical proposition, the effect of the testimony is incapable of limitation. Applying the reasoning employed in that case to the facts in the instant case, the conclusion is reached that the effect of the testimony was incapable of limitation. *If the result of admitting this testimony would be to affect the judgment which might be rendered as to the heir, Frank Goodwin, it was properly excluded. This testimony related only to the deed executed by J. Goodwin and his wife during his lifetime. It could not be upheld so far as Mrs. Goodwin's interest was concerned and canceled as to Frank Goodwin's interest. The deed either conveyed all of this tract of land or it conveyed nothing. The property was community and was not a homestead. Mrs. Goodwin's signature was not essential as to its validity. No effect could have been given this testimony without affecting the judgment as to Frank Goodwin. It could not, therefore, be limited by an instruction of the court, and no error was committed by its exclusion.* [Emphasis added.]

We have the identical situation referred to by the court in *Colvard* in the instant case. In this case, the testimony of appellee Riggs related directly to the right of Mrs. Bauer to convey the property to Farris and Rhoades. That conveyance could not be upheld as to Mrs. Bauer and cancelled as to Farris and Rhoades. A judgment repudiating the right of Farris and Rhoades to retain the property is also a judgment cancelling the deed as to Mrs. Bauer and creating rights and obligations of Mrs. Bauer

under the alleged partnership with appellee. If appellee Riggs signed the December 30, 1960 release of claim agreement, he had no interest in the twelve duplexes in the Linwood Addition at the time they were conveyed to Farris and Rhoades by Mrs. Bauer in December of 1976. If the release was signed by Riggs, that property was then owned by Mrs. Bauer as community survivor and the estate of Everett L. Bauer. If the release was not signed by Riggs, then the property was owned by the partnership of Riggs and Everett L. Bauer, and the deed to Farris and Rhoades would be null and void, as the trial court held.

Mrs. Bauer's rights as an heir were directly involved and concerned in the question of whether or not the denial by Riggs that he executed the December 30, 1960 release agreement was admissible. She, relying on the execution by Riggs of the release of his claim, conveyed her interest as well as her deceased husband's interest to Farris and Rhoades: Mrs. Bauer's interest was thus not separable or severable from the interest of the grantees of the twelve duplexes. The rights of Farris and Rhoades are wholly dependent upon the right of Mrs. Bauer to convey the property, which in turn is dependent upon the validity of the instrument which is the subject of the disputed transaction testimony. Appellee can receive no relief from Farris and Rhoades without adversely affecting the rights of Mrs. Bauer. *See* also, in support of the propositions here related, *Ralls v. Ralls,* 256 S.W. 688 (Tex.Civ.App.—Amarillo 1923, writ dism'd); *Fuston v. Wilson,* 144 Tex. 588, 192 S.W.2d 444 (Tex.1946).

Since the rights of Mrs. Bauer are necessarily affected by any judgment against Farris and Rhoades, Mrs. Bauer is an indispensable party to an action against Farris and Rhoades. If one party is an indispensable party to the action against the second party, the cases against the two parties are certainly not procedurally severable.

Even if Mrs. Bauer were not an indispensable party to the action against Farris and Rhoades, which she is, the causes of

action against Mrs. Bauer on the one hand, and Farris and Rhoades on the other, would not be properly procedurally severable because they involve identical facts and issues. *See Hayes v. Norman*, 383 S.W.2d 477 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.).

Appellee urges upon this court the proposition that even if the admission of Riggs' denial testimony was error, that it was harmless error because there was ample other evidence, from disinterested witnesses, to the same effect, that Riggs did not sign the release of claim agreement. We cannot accept this argument. The effect of this other testimony referred to by appellee is primarily that from time to time, during the years between 1961 and 1976, several of the witnesses heard Everett L. Bauer or Riggs state that the two men were partners in the original nine duplexes. There was also negative testimony from several third party witnesses, all friends or co-workers of Riggs to the effect that none of these witnesses, during all these years, ever saw or heard of any document releasing Riggs' interest in the original nine duplexes. While this testimony may constitute some circumstantial evidence that Riggs had not released his claim, it pales into insignificance when the direct and positive testimony of appellee Riggs that he positively did not sign any such release agreement is considered. It is our opinion that the erroneous admission of appellee's transaction testimony was clearly prejudicial to the rights of Mrs. Bauer and probably caused the findings of the jury adverse to her interests. The testimony of appellee denying execution of the pivotal document in this case was the only direct testimony relating to the execution of the document. We hold that its admission was erroneous and that it was harmful and inimical to the rights and interests of appellant Rosalie Ellen Bauer.

Accordingly, appellants' first point of error is sustained.

■ Appellant Bauer's points of error numbers two through thirteen and appellant Farris' points of error numbers one through twelve attack the findings of the jury that from February 8, 1963 to December 10, 1976, Everett L. Bauer made payments on each of lots 1, 2 and 3, block 9, Linwood Addition, from monies obtained in part from rental income from lots 5, 8, 9, 10, 11, 12, 13, 14 and 15, block 9, Linwood Addition, and that 90–95 percent of "such payments" were made with "such monies". These findings were contained in the jury's answer to special issue numbers six through eleven of the court's charge. Appellants Bauer and Farris both take the position, in these points of error, that there was no evidence, or in the alternative insufficient evidence, to support the jury's findings to said special issue numbers six through eleven.

In considering the above enumerated points of error, it must be remembered that Everett L. Bauer, late in 1961 and early in 1963, purchased these "last three lots" in his own name, executing purchase money notes and deeds of trust securing said notes in payment of these lots. Title to these three duplexes at all times remained in Bauer, until these duplexes were conveyed by appellant Bauer to Farris and Rhoades on December 10, 1976. These lots were purchased by Bauer long after appellee Riggs left the employment of Everett L. Bauer and the Bauer Company. He was in no way involved with the purchase of these "last three lots".

We agree with the appellants' contentions that there was no evidence, or, clearly, insufficient evidence, to support any findings that appellee Riggs had any interest in the title to these "last three lots".

The evidence that rentals from the other nine lots in the Linwood Addition were used to make payments on the "last three lots" was extremely weak, confusing and somewhat undefined. Appellee's own expert, one Clem Bailey, an accountant, testified that rentals from all twelve duplexes were deposited in the same account, but he also testified that, although rentals from the nine duplexes *could* have been used to make payments on the three duplexes, that there was no way to determine whether or not such rentals in fact were so used. The

**354**

court's auditor found that no money paid on the original acquisition of the three lots was derived from rental income of the other nine lots. The court's auditor also agreed with appellee's expert, Bailey, that there was no way to determine whether income from the nine lots was used to make payments on the three lots after 1963, because income from all twelve lots was used to serve as debt payment on all twelve properties. The auditor reported on page 19 of his report that:

> In all but three years, during 1964 through 1976, Wardside Company reported operating profit, before depreciation. Therefore, the positive cash-flow from the business in these years was used to service the debt on *all* properties. *In addition, E.L. Bauer continued making advances throughout these years. Without a very detailed isolation and analysis of all contributions and advances, as well as analysis of the separate properties of Wardside Company, an accurate determination pursuant to this step in the Order cannot be made.* [Emphasis added.]

There is simply no evidence, or in the alternative insufficient evidence, to support the jury's findings that 90–95 percent of the payments on the "last three lots" were made from rental income from the other nine duplexes. As previously pointed out, both the appellee's own expert witness and the court's auditor testified and reported to the contrary.

There is also no basis for the court's holding that the "last three lots" were partnership property. Title to these three duplexes was always in Everett L. Bauer or his estate until the lots were conveyed to Farris and Rhoades in December of 1976. There was no evidence and no theory advanced by appellee that would support the transferring of title to appellee, to Wardside Corporation, or to any partnership.

We also point out that even if the evidence supported the jury's findings that payments had been made on the "last three lots" from rentals from the nine lots, there is no finding, and no evidence, as to how many payments were made, and how much

of the total payments made on the three lots were so made. Since this is true, the jury's finding as to the proportion and amount of such payments so applied are meaningless. We think those findings were based on speculation and conjecture, and not on evidence.

We therefore hold that the findings of the jury to special issue numbers six through eleven were not supported by any evidence, or insufficient evidence, and cannot stand. In this regard, and with this holding, we further find and hold that title is, and was at all times, in Everett L. Bauer and his estate, and could not and did not, under this evidence, pass at any time, in any respect or in any percentage, to appellee Riggs or to the original partnership between Riggs and Everett L. Bauer. It was error to include these "last three lots" within the partnership and to make any inquiry of the jury whatever with regard to said "last three lots".

Accordingly, appellants' points of error, recited above, are all sustained; the judgment is reversed and remanded as to the sale of the original nine lots from appellant Rosalie Ellen Bauer to Farris and Rhoades, with instructions to retry the issues involving that sale, in accordance with this opinion, excluding the denial testimony of appellee Riggs discussed above. With respect to the "last three lots", judgment is reversed and rendered for appellants Bauer and Farris.