(No. 57908.— )

JOHNSTOWNE CENTRE PARTNERSHIP, Appellee, v. GEORGE CHIN, JR., *et al.,* Appellants.

*Opinion filed December 1, 1983. Rehearing denied January 27, 1984.*

Myer, Capel, Hirschfeld, Muney, Jahn & Aldeen, of Champaign, for appellants.

Pelini, Crewell & Sheffler, of Champaign, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Johnstowne Centre Partnership, developed a shopping center in Champaign and leased part of the complex to defendants, George Chin, Jr., and Eddie Moy Chin. The Chins had planned to operate a restaurant in the shopping center, but they repudiated their lease be-

fore taking possession of the premises. The partnership filed suit in the circuit court of Champaign County, and the trial court awarded damages for defendants' breach of the rental agreement. The partnership sought additional damages on appeal, and the Chins filed a cross-appeal that maintained the partnership's breach excused the Chins' performance of the lease. The appellate court awarded the partnership additional damages and denied the Chins' cross-appeal. (110 Ill. App. 3d 595.) We granted the defendants' petition for leave to appeal (87 Ill. 2d R. 315(a)).

On February 25, 1976, the parties signed a 10-year lease beginning November 25, 1977, for a site in Johnstowne Centre, a new shopping complex near the University of Illinois campus. The Chins planned to operate a "pasta house" restaurant with a full menu, table service by waiters and waitresses, alcoholic beverages, and bar service. The Chins were concerned about possible competition, and the lease agreement contained a restrictive covenant which provides in pertinent part:

"Lessor agrees that it will not permit any other tenant within JOHNSTOWNE CENTRE to operate restaurant facilities, except that Lessor may rent for purposes of a coffee shop or other snack shop operation premises not to exceed 1,500 square feet of interior space, plus outside seating area immediately adjacent to such premises. Said coffee shop or snack shop will have a limited menu and will not sell complete meals. Lessor will not permit any other tenant of JOHNSTOWNE CENTRE to obtain a liquor license for consumption of beverages on the premises within JOHNSTOWNE CENTRE. Notwithstanding the foregoing, any tenant within JOHNSTOWNE CENTRE shall be permitted to sell, as incidental to its operation, ice cream, candy, soft drinks, milk, packaged liquors, cheeses, grocery items and "carry-out" snacks. This restriction also applies to the sixty-four feet of property immediately East of JOHNSTOWNE CENTRE."

In March 1976, the partnership signed a lease with a tenant named Lox, Stock & Bagel for space in the Johnstowne Centre Mall. Lox, Stock & Bagel began operating in December 1977, serving a variety of sandwiches, soups, beverages, desserts and a salad bar. Bagels and rye bread were baked on the premises, and the food was served cafeteria style, with customers lining up, choosing what they wanted to eat, and paying a cashier at the end of the line.

The Chins formally repudiated their lease on June 10, 1977. The partnership obtained a substitute tenant, the Parthenon Restaurant. The Parthenon signed a 10-year lease beginning March 15, 1978, but vacated the premises pursuant to a written termination agreement on November 30, 1979. After an eight-month period of vacancy, the premises were rented to Giordano's Restaurant. The lessees took possession of the premises on August 1, 1980.

The partnership filed suit against the Chins on September 26, 1978, and the trial court awarded damages for the four months preceding the Parthenon's lease but denied recovery for the eight-month gap between the two substitute tenants. The trial court's award included rents, fees, and interest, and the Chins were credited with their down payment and deposit, with interest. The total award to the partnership totaled $16,252.07. The appellate court awarded additional damages for the eight-month gap between substitute tenants and refused to allow a setoff for the higher rent paid by Giordano's after Giordano's took possession of the premises.

We turn now to the first issue raised on appeal, whether the alleged violation of the restrictive covenant excused the Chins' performance under the lease. Resolution of this issue involves careful scrutiny of the terms of the restrictive covenant. A contract's meaning must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language.

(*Brown v. Miller* (1977), 45 Ill. App. 3d 970, 972.) Extrinsic evidence may be introduced to explain the meaning of an ambiguous contract provision, but the provision is not rendered ambiguous simply because the parties do not agree on its meaning. *White v. White* (1978), 62 Ill. App. 3d 375, 378.

In the case at bar, the parties do not agree concerning the characterization of Lox, Stock & Bagel. The Chins argue that Lox, Stock & Bagel is a restaurant, and not a coffee or snack shop. The partnership argues that the terms of the restrictive covenant have not been violated, and that the Chins were not justified in repudiating their lease. Black's Law Dictionary defines the term "restaurant": "An establishment where refreshments or meals may be obtained by the public. [Citation.] It includes cafes, lunchrooms, dairy lunch rooms, cafeterias, tea rooms, waffle houses, fountain lunches, sandwich shops, and many others." (Black's Law Dictionary 1477 (rev. 4th ed. 1968).) The term "snack shop" is not defined by Black's Law Dictionary, but Webster's defines "snack bar" as "a public eating place where snacks are served, usu. at a counter." (Webster's Third New International Dictionary 2154 (1971).) A "coffee shop" is defined as "a small restaurant that is either independent or attached to a hotel and where light refreshments or regular meals are served." Webster's Third New International Dictionary 439 (1971).

The restrictive covenant in the Chins' lease was intended to restrict competition and provide a favorable climate for the Chins' restaurant to succeed. Such devices are commonly used in leases concerning property in shopping centers. (See Baum, *Lessors' Covenants Restricting Competition*, 1965 U. Ill. L.F. 228; Note, *Restrictive Covenants in Shopping Center Leases*, 34 N.Y.U. L. Rev. 940 (1959).) In the case at bar, it appears the parties intended the Chins' restaurant to be the only one operating within the confines of the shopping center. The limited exception

to this covenant permitting a coffee shop or a snack shop has precipitated the semantic battle that brings the case before this court.

The trial court ruled on this issue, but the page that contains the trial judge's precise language is missing from the record on appeal. However, both parties agree that the trial judge characterized Lox, Stock & Bagel as a "restaurant with a limited menu." The trial judge held that the restrictive covenant had not been violated, and the appellate court affirmed the trial court on this point. 110 Ill. App. 3d 595, 601.

Restrictive covenants in leases are an intrinsic part of the contract between the lessor and the lessee, and the breach of a restrictive covenant can justify a lessee's repudiation of the lease. In *University Club v. Deakin* (1914), 265 Ill. 257, this court held that a lessee who had bargained for the exclusive right to operate a jewelry and art shop in a downtown building could repudiate the lease if the lessor subsequently allowed a competitor to set up shop in the same building. The court held:

"Plaintiff in error contracted for the exclusive right to engage in this particular business in that building. *** It is idle to say that an action for damages for a breach of contract would afford him ample remedy. He contracted with defendant in error for the sole right to engage in this specialty in its building, and if defendant in error saw fit to ignore that provision of the contract and suffer a breach of the same, plaintiff in error had the right to terminate his lease, surrender possession of the premises and refuse to further perform on his part the provisions of the contract." 265 Ill. 257, 262.

Having established that a breach of a restrictive covenant can justify a lessee's repudiation of a lease, we must now review the facts in this case to determine if they warranted the repudiation by the Chins. Three witnesses testified on this issue at trial. John Kiser, part owner and operator of Lox, Stock & Bagel, testified that he considered

the operation to be a restaurant. Harold Halpern, one of the partners in the Johnstowne Centre Partnership, testified that he had discussed the possibility of a second eating establishment with the Chins before the lease was signed. However, the record merely reveals that Halpern showed one of the Chins a photograph of an eating establishment called the "Nutcracker Sweet" as an example of what could be installed in the portion of the shopping center later occupied by Lox, Stock & Bagel. The partnership has not established that the Chins were apprised of the nature of their future neighbor, and the Chins did not alter the language of the restrictive covenant after this conversation. George Chin, Jr., testified that Halpern told him that the partnership planned to rent space to a snack shop that would serve yogurt, cookies and desserts, but not complete meals.

We must now determine if Lox, Stock & Bagel can be considered a snack shop or coffee shop that does not serve complete meals. The first part of the exception to the restrictive covenant is somewhat problematical. All restaurants have a menu that is limited to some degree. Even a restaurant that offers hundreds of dishes has a limited menu in the sense that there are thousands of dishes that are not offered. In applying the restrictive covenant to the facts before this court, the primary objective is to construe the contract as a whole to give effect to the intentions of the parties. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286.) Reading the two terms "limited menu" and "complete meals" together provides a standard that is easier to apply to the facts in this case. Lox, Stock & Bagel served hot and cold meat sandwiches, lox, soup, cheeses, a salad bar, various desserts, milk, coffee, tea, and soft drinks, as well as "homemade" bagels and rye bread. Sandwiches were prepared on the premises, and customers had the option of having them heated in a microwave oven as they waited. The service of these items is not incidental

to the operation of the restaurant. Paragraph three of the menu states, "For dessert, we serve a garden fresh carrot-nut cake and we feature the richest, creamiest cheesecake this side of the Catskills. Not a poor Midwestern imitation but the 'real thing' from Brooklyn! It's absolutely the best cheesecake you'll find and the perfect 'final touch' to a great meal!" It is difficult to imagine why a restaurant that did not serve complete meals would make such a claim. The facts presented in this case clearly establish that Lox, Stock & Bagel was a restaurant serving complete meals, thus violating the restrictive covenant in the Chins' lease.

The cases relied on by the partnership are clearly distinguishable. In *Snyder's Drug Stores, Inc. v. Sheehy Properties, Inc.* (Minn. 1978), 266 N.W.2d 882, the court reasoned that the restrictive covenant had not been breached because the defendant's business was not of the same type as the plaintiff's. The restrictive covenant in *Snyder's* contained vague language that did not specifically designate what types of businesses were prohibited. The covenant in the case at bar can be more clearly construed because of its specific language. Courts confronted with covenants similar to the Chins' have generally enforced the provisions of the covenant. *Webster v. Star Distributing Co.* (1978), 248 Ga. 270, 244 S.E.2d 826; *Wettstein v. Love* (Tex. 1979), 583 S.W.2d 471.

Since this issue is dispositive, we need not reach the other issues raised on this appeal. We conclude that the ruling of the trial court was against the manifest weight of the evidence and that the violation of the restrictive covenant justified the repudiation of the lease by the Chins. We therefore reverse the holding of the circuit court and the appellate court and remand the case for computation of the amount of the damages due the Chins based on their cross-appeal for a refund of their deposit and architect's fees.

*Reversed and remanded,*
*with directions.*