ROBERT F. SMITH, as Independent Adm'r of the Estate of Barbara A. Smith, Deceased, Plaintiff-Appellant, v. CRAIG T. HARAN *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—94—0624

Opinion filed June 27, 1995.—Rehearing denied July 28, 1995.

HARTMAN, J., concurring in part and dissenting in part.

John W. Turner, of Chicago, for appellant.

Di Monte, Schostok & Lizak, of Park Ridge (Andrew D. Werth, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Robert F. Smith, as independent administrator of the estate of Barbara A. Smith, deceased (the Estate), brought this action against Craig Haran and Judy Haran (the Harans) to collect on an instrument (Instrument) signed by them. The circuit court found that the Instrument was not negotiable and that the Estate was not a holder in due course. Following a bench trial, the court ruled that the Instrument failed to create an enforceable contract because it contained no consideration.

The issues on appeal include whether (1) the circuit court erred in finding that the Instrument did not contain a "promise or order to pay" or words of equivalent import; (2) the provisions in article 3 of the Uniform Commercial Code—Commercial Paper (UCC) (Ill. Rev. Stat. 1985, ch. 26, par. 3—101 *et seq.* (now, as amended, 810 ILCS 5/3—101 *et seq.* (West 1992))) create a rebuttable presumption that consideration was given in exchange for the Instrument; (3) the circuit court erred in excluding the testimony of the Harans pursuant to the Dead-Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201 (now 735 ILCS 5/8—201 (West 1992))); and (4) the evidence rebuts the presumption of consideration. For reasons that follow, we reverse the judgment of the circuit court and remand the cause for a new trial.

Prior to trial, the circuit court ruled that the Instrument was not negotiable because it did not contain an unconditional promise to pay and it was not payable to order or to bearer. The trial proceeded under fundamental contract principles, not under the provisions of the UCC.

At trial, Robert Smith testified that his mother, Barbara Smith (decedent), died in December 1991. About one month after her death, Robert, as administrator of his mother's estate, found the Instrument in her wall safe. The Instrument provides:

"Nov. 13, 1986

Mrs. Barbarba [*sic*] Smith
315 Kenilworth
Prospect Heights,Il

### PROMISSORY NOTE

WE — Craig T. Haran & Judy M. Haran owners of the property and house located & described below,

1833 N. Hicks Road
Palatine,Il 60074

Legal Descriped [*sic*] as—
The North 125 feet of the South 1690 Feet of the West 390 feet of the SouthEast quarter of Section 2, township 42 North, Range 10 East of the Third Principal Meridan [*sic*], in Cook County, Illinois—

Also Described as Lot 13 in Kliens subdivision of Part of the South-East quarter of Section 2, Township 42 North, Range 10 East of the Third Principal Meridian, according to the Plat thereof recorded October 11,1949 as Doucment [*sic*] No. 14651080, in Cook County Illinois.

We collaterize this note of $125,000 using our above property and house.

Note to be paid back within 12 months of above date with 10% interest.

/s/
_____
Craig T. Haran

/s/
_____
Judy M. Haran."

Other valuable items found in the safe included a deed to a home that she owned, insurance papers, and jewelry. At the time of the death of Robert's father in February 1985, decedent, who was very good about keeping records, had between $300,000 and $400,000 cash in her home.

Craig Haran testified that he first met decedent in 1976 when she hired his construction company to build an addition to her home. They became good friends, and Craig kept in contact with decedent up until a couple of weeks before her death.

Judy Haran prepared the Instrument, and she and Craig signed it. About 30 days after Craig delivered the Instrument to decedent,

he brought her a land survey of the property described in the note. Craig denied ever transacting business with decedent and stated, "We were about to, but we didn't." He also testified that he never received a demand for payment of the Instrument until after decedent's death. The Instrument was not recorded until January 10, 1992, about a month after decedent passed away. Objections to the Harans' remaining testimony relating to their transaction with decedent were sustained pursuant to the Illinois Dead-Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201 (now 735 ILCS 5/8—201 (West 1992))).

Gerald Rintz testified that he is a construction consultant and a good friend of Craig. Rintz attended two meetings with decedent and Craig in the summer of 1986 regarding the proposed development of industrial commercial condominiums. After the first meeting, Rintz looked at some potential sites for the development and presented this information in their second meeting. Decedent then appeared to have "cooled off on the idea." Rintz was not aware of any deal being consummated between decedent and Craig. He estimated that the cost to start up one of these ventures in 1986 would have been between $300,000 and $400,000. Rintz left Illinois and went to San Diego in early October 1986.

In a written opinion, the circuit court ruled that the Instrument failed to create an enforceable contract because it lacked any consideration. The court noted that there was no paper trail indicating an exchange of cash or deposit of funds, no evidence that the venture was ever started, and no testimony from bankers or attorneys who would ordinarily have been involved in such a deal. The Estate appealed.

## I

The Estate first contends that the circuit court erred in concluding that the Instrument did not contain a "promise to pay."

One of the conditions required for negotiability is that an instrument "contain an unconditional promise or order to pay a sum certain in money." (Ill. Rev. Stat. 1985, ch. 26, par. 3—104(1)(b).) Section 3—102(1)(c) defines "promise" as "an undertaking to pay and must be more than an acknowledgement of an obligation." (Ill. Rev. Stat. 1985, ch. 26, par. 3—102(1)(c).) The Illinois Code Comment to section 3—102(1)(c) states:

> "This paragraph is a restatement of Illinois case law. In Hibbard v. Holloway, 13 Ill. App. 101 (1st Dist. 1883), the court said that either words 'promise to pay' or words of equivalent import must be used. In Weston v. Myers, 33 Ill. 424 (1864), 'Good for 50 cents' was held sufficient." Ill. Ann. Stat., ch. 26, par. 3—102, Uniform Commercial Code Comment, at 9 (Smith-Hurd 1963).

Generally, a court of review will not disturb a circuit court's findings unless they are manifestly against the weight of the evidence. (*Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142, 482 N.E.2d 1085, 1095.) Construction and legal effect of an instrument, however, raise a question of law, and a court of review may review these conclusions under a *de novo* standard of review. *Northern Illinois Medical Center*, 136 Ill. App. 3d at 142, 482 N.E.2d at 1095; *Naylor v. Kindred* (1993), 250 Ill. App. 3d 997, 1003, 620 N.E.2d 520, 524.

In this case, the relevant parts of the Instrument are as follows: the name "Mrs. Barbarba [*sic*] Smith," her address, and the heading "Promissory Note" listed at the top of the Instrument; the phrases "We collaterize this note of $125,000.00 ***" and "Note to be paid back within 12 months ***"; and, importantly, the signatures of the Harans.

■ The term "note" is used three times in this Instrument, which was prepared by Judy and signed by each of the Harans. "Note" is defined as "[a]n instrument *containing an express and absolute promise* of signer (*i.e.* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time." (Emphasis added.) (Black's Law Dictionary 1060 (6th ed. 1990).) Although the mere use of the term "note" does not, by itself, turn a piece of paper into a note, its repeated use in the Instrument here is a factor to consider in determining whether it contains a promise to pay. The Harans are chargeable with knowing the common meaning of a word they chose to use. See *Symanski v. First National Bank* (1993), 242 Ill. App. 3d 391, 396, 609 N.E.2d 989, 992, *appeal denied* (1993), 151 Ill. 2d 578, 616 N.E.2d 348 (instrument will be most strongly construed against the party who prepared it); *Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480, 481 (document's meaning must be determined from words or language used).

There appears to be some tension between the definition of "promise" in section 3—102(1)(c) and the Illinois comment to that same section. Specifically, it is difficult to discern how "Good for 50 cents" is "more than an acknowledgement of an obligation." Nevertheless, the legislature's intent to codify the holding in *Weston* must be given effect. (See *Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484, 588 N.E.2d 1111, 1114.) Because there is no meaningful difference between "Good for 50 cents" and "Note [of $125,000] to be paid back within 12 months," we conclude that the Instrument bears a promise to pay.

This conclusion is consistent with decisions from other jurisdictions that construe the same UCC provisions. For example, in *Fejta*

*v. Werner Enterprises, Inc.* (La. App. 1982), 412 So. 2d 155, 157, *cert. denied* (La. 1982), 415 So. 2d 953, plaintiff brought suit on an alleged promissory note, which provided:

> "Promissory Note
>
> Werner Enterprises, Inc. by resolution and signature acknowledges that a debt of $8000.00 is owed to Mr. Stan Fejta (Fejta Construction Company) regarding the construction of 'Pontchartrain Plaza,' 1930 West End Park.
>
> This note is payable at maturity on or before May 19, 1979, plus 10% (percent) interest.
>
> Date: April 4, 1979."

The writing was followed by signatures of the parties, as well as signatures of two witnesses. Defendant argued that the note did not bear an unconditional promise to pay and was merely an acknowledgement of a preexisting debt. The court rejected that argument, stating that the "word 'promise' is not sacramental in a promissory note." (*Fejta*, 412 So. 2d at 158 (on denial of rehearing), quoting *De Rouin v. Hinphy* (La. App. 1968), 209 So. 2d 352.) Citing section 3—102(1)(c) of the UCC, the *Fejta* court noted that "although some of the instrument's language indicates it is merely a recognition that a debt exists, examination of the entire writing convinces us that it is a written promise." (*Fejta*, 412 So. 2d at 157.) The court further observed that the styling of the instrument as "Promissory Note" and the language "note is payable at maturity" supported its interpretation. *Fejta*, 412 So. 2d at 157-58.

Similarly, in *Mauricio v. Mendez* (Tex. Ct. App. 1987), 723 S.W.2d 296, 297 (emphasis in original) plaintiff sued to recover on the following note:

> "10-9-84
>
> To Whom it may Concern
> Equipment sold to <u>Jose Mendez or Carolina S. Mendez</u> From Paul Mauricio
>
> | | |
> | --- | --- |
> | Amount | <u>9373.00</u> |
> | down payment | <u>1000.00</u> |
> | Balance due— | 8373.00 |
>
> There will be no intrest [*sic*] charged until 10-9-85. Intrest [*sic*] will be at the rate of 12% per year
> <u>Mr. & Mrs. Mendez</u> will pay as much as possible per month
> <u>Minimum amount will be $500.00 per month</u>
> Seller  /s/  Paul Mauricio
> buyer  /s/  Jose Mendez S."

Citing the pertinent sections of the UCC, the court concluded: "The written agreement contains an unconditional promise to pay plaintiff

at least a certain sum of money each month. It is, therefore, in the form of a note." *Mauricio*, 723 S.W.2d at 298.

Furthermore, numerous pre-UCC cases have held that no particular words of promise are required in a promissory note as long as there can be deduced a promise to pay. See, *e.g.*, *De Rouin v. Hinphy* (La. App. 1968), 209 So. 2d 352, 353-54, *cert. denied* (La. 1968), 211 So. 2d 330 (finding that the words "I have this day borrowed *** $12,100 to be paid on demand" constitute a promise to pay); *McDonald v. Hanahan* (1952), 328 Mass. 539, 540-41, 105 N.E.2d 240, 241-42 (holding that the words "Rec. of *** [$500] as a loan, payments arrangements to follow at later date" create a promissory note); *In re Nellis' Will* (1926), 214 N.Y.S. 378, 380 ("A statement that a person has borrowed the sum of $2,000, 'which is subject to and payable on demand,' imports a promise to pay").

The foregoing discussion persuades us that the circuit court erred in finding that the Instrument did not contain a promise to pay or words of equivalent import.

## II

The Estate's next contention is that it is entitled to a rebuttable presumption that decedent gave consideration for the Instrument.

Section 3—805[1] provides that article 3 of the UCC "applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this Article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument." (Ill. Rev. Stat. 1985, ch. 26, par. 3—805.) In order for an instrument to be considered negotiable, it must:

---

[1]Section 3—805 was repealed by Public Act 87—582, § 2, effective January 1, 1992. The Estate claims that because the instant facts took place prior to January 1, 1992, section 3—805 still applies to this case because the amendatory act diminishes substantive rights and, therefore, should apply prospectively only.

Statutory amendments that are substantive in nature rather than procedural are prospective in application. (*Johnson v. Johnson* (1993), 244 Ill. App. 3d 518, 526, 614 N.E.2d 348, 354.) Although there is no provision in the revised article 3 that is identical to former section 3—805, new section 3—104 provides for a similar section, but applies only to checks. (810 ILCS Ann. 5/3—104(c) Uniform Commercial Code Comment 2 (Smith-Hurd 1993).) Because the amendatory act diminishes substantive rights formerly available in section 3—805, it must be applied prospectively. Accordingly, former section 3—805 is applicable to this case.

"(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by [article 3 of the UCC]; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer." Ill. Rev. Stat. 1985, ch. 26, par. 3—104(1).

If an instrument meets the requirements of section 3—805, the following provisions contained in article 3 apply to the instrument. Section 3—307 states that "[w]hen signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Ill. Rev. Stat. 1985, ch. 26, par. 3—307(2).) Furthermore, one who does not have the rights of a holder in due course takes the instrument subject to the defense of want or failure of consideration. Ill. Rev. Stat. 1985, ch. 26, par. 3—306(c).

■ In this case, the Instrument is not payable to order or to bearer, but is otherwise negotiable. It is signed by the makers (the Harans); contains an unconditional promise to pay a sum certain in money ($125,000) and no other promise, order, obligation or power given by the maker; and is payable at a definite time (within 12 months of November 13, 1986). (See Ill. Rev. Stat. 1985, ch. 26, par. 3—109(1)(a).) Because the terms of the Instrument do not preclude transfer, it falls under section 3—805 and is governed by article 3 of the UCC. Pursuant to section 3—307(2), the Estate is entitled to recover on the Instrument unless the Harans establish a defense since the Harans admit that they signed it. Under section 3—805, the Estate cannot be considered a holder in due course of the Instrument because it is not payable to order or to bearer. The Estate thus takes the Instrument subject to the defenses in section 3—306, including the defense of want of consideration. Ill. Rev. Stat. 1985, ch. 26, par. 3—306(c).

Therefore, the Estate should recover on the Instrument unless the Harans establish that no consideration was given.[2]

---

[2]Because of this conclusion that the Estate is entitled to a rebuttable presumption of consideration, there is no need to address the Estate's argument that a presumption of consideration is created under section 3 of "An Act to revise the law in relation to promissory notes ***" (Ill. Rev. Stat. 1985, ch. 17, par. 601 (formerly Ill. Rev. Stat. 1979, ch. 98, par. 1) (now 815 ILCS 105/3 (West 1992))). See Ill. Ann. Stat., ch. 26, par. 3—805, Uniform Commercial Code Comment, at 425 (Smith-Hurd 1963) (explaining that sec-

## III

The Estate next asserts that the circuit court was correct in barring the Harans' testimony concerning their dealings with decedent pursuant to the Dead-Man's Act (Act) (Ill. Rev. Stat. 1985, ch. 110, par. 8—201 (now 735 ILCS 5/8—201 (West 1992))).

The Harans submit that the Act is intended to be used as a shield to protect estates from fraudulent claims, but cannot be used as a sword to prevent the opposing party from presenting a legitimate defense. Alternatively, they claim that their testimony that decedent never gave them $125,000 is outside of the scope of the Act because it does not relate to an "event which took place in the presence of the deceased," as required by the Act.

Section 8—201 states in pertinent part:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person *** , no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased *** ." (Ill. Rev. Stat. 1985, ch. 110, par. 8—201 (now 735 ILCS 5/8—201 (West 1992)).)

The goals of the Act are to protect decedents' estates from fraudulent claims and to equalize the position of the parties in regard to the giving of testimony. (*Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 538, 406 N.E.2d 879, 883.) The Act bars only that evidence which decedent could have refuted. (*Rerack v. Lally* (1992), 241 Ill. App. 3d 692, 695, 609 N.E.2d 727, 730, *appeal denied* (1993), 151 Ill. 2d 577, 616 N.E.2d 346.) The circuit court's evidentiary ruling is a matter of discretion and will not be reversed absent a clear abuse of that discretion. *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 420, 615 N.E.2d 736, 744.

■ Here, the Harans' first argument that the Act may not be used as a sword is without merit. The Act specifically states that it pertains to any action in which the representative of the deceased person "sues or defends." Therefore, the Act contemplates actions, such as this one, where the representative of the decedent "sues" to protect the interests of the estate. See *Hartman v. Townsend* (1988), 169 Ill. App. 3d 111, 523 N.E.2d 199 (using the Dead-Man's Act to exclude testimony even though the suit was initiated by the estate of decedent to recover money allegedly owed to the estate).

The Harans' next contention is that their testimony that decedent never gave them money should not have been excluded. They claim that this nonevent could not have taken place "in the presence of the deceased" and therefore is not covered by the Act.

---

tion 601 has virtually the same effect as section 3—805).

"The word 'event' as ordinarily used and understood refers to a 'happening or occurrence.' " (*Manning v. Mock* (1983), 119 Ill. App. 3d 788, 799, 457 N.E.2d 447, 453, quoting Webster's New World Dictionary 485 (2d coll. ed. 1976).) In *Hartman* (169 Ill. App. 3d at 116-17, 523 N.E.2d at 202), the court construed the term "event," as used in the Dead-Man's Act. There, the executor of decedent's estate sued defendant, seeking the return of $20,000 paid by decedent to defendant. The testimony of plaintiff's witnesses suggested that decedent made a bad investment in a motel owned by defendant. Defendant's theory was that the money was paid to his wife, who allegedly had lived with and had been employed by decedent. At trial, defendant was permitted to testify that no other person had ever shared the ownership of the motel with him. Defendant and his wife also testified, over objection, that she at one time lived with decedent. Concerning defendant's testimony that no other persons had an ownership interest in the motel, the appellate court held that the "negative" testimony was not an "event" which took place in the presence of decedent. It also held that the testimony that defendant's wife resided with decedent was not an event within the meaning of the Act. It stated: "[P]erhaps the act of 'moving in together' could be correctly termed an 'event,' but the continued relationship *** over some period of time *** is more of a 'status' than a 'happening' or an 'occurrence.' " 169 Ill. App. 3d at 117, 523 N.E.2d at 202.

Similarly, in *Rerack* (241 Ill. App. 3d at 695, 609 N.E.2d at 730), the court rejected an "overly broad" construction of the term "event." In that case, a vehicle driven by decedent struck the back of plaintiff's car, which had already come to a complete stop. At trial, plaintiff was not permitted to testify to the overall mechanical condition of his car, to the weather conditions at the time of the accident, that his vehicle was stopped for two minutes, that his foot was on the brake pedal of his car continuously, that he heard no sound prior to the accident's impact, and that he observed damage to the rear of his vehicle the day after the occurrence. The reviewing court held that although plaintiff was properly barred from testifying with regard to the collision itself, none of the precluded testimony above reasonably could be said to have occurred during the event, which it concluded was the accident. Further, the testimony did not relate to an occurrence in the "presence" of decedent.

■ In this case, as in *Hartman* and *Rerack*, decedent's failure to give the Harans money does not qualify as an "event" under the Act. If the testimony was to be that decedent did indeed give them money at some specific point in time, that would clearly qualify as an event. But decedent's *failure* to give the Harans money at any point in time

cannot be so characterized. This is similar to the finding in *Hartman* that negative testimony is not an event that took place in the presence of the decedent. (*Hartman,* 169 Ill. App. 3d at 116, 523 N.E.2d at 202.) The Harans' proposed testimony is similarly negative.

Alternatively, these facts require a finding that the bar of the Dead-Man's Act has been waived. The note in question here, to be where it was found, must have been given to the deceased (an event in her presence) and, since it is unrealistic to assume that it was merely given to her without any communication whatsoever, there must been conversation about it. Indeed, the Estate relies entirely on inferences—on the existence of the instrument, its having been retained by decedent, and its having been kept by her in a special place—as evidence that consideration was given.

In *Hoem v. Zia* (1994), 159 Ill. 2d 193, 636 N.E.2d 479, our supreme court dealt with an analogous situation. In that medical malpractice case, the plaintiff's expert was allowed to interpret and, according to the supreme court, "put his gloss" on the notes of the defendant treating doctor. This was done in order to show that the treating doctor failed to recognize his now-deceased patient's clear signs of a prior heart attack and clear warnings of an impending heart attack, and thus failed to initiate a program of cardiac diagnosis and treatment. In concluding that the expert's testimony constituted a waiver of the bar of the Dead-Man's Act, the supreme court said:

> "The purpose of the Dead-Man's Act is to remove the temptation to the survivor to a transaction to testify falsely and to equalize the positions of the parties in regard to the giving of testimony. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 606.1, at 314-15 (5th ed. 1990).) In this case, allowing the representative of the deceased to introduce her version of why [the deceased] went to [the treating doctor], without giving an equal opportunity to [the treating doctor], would not advance the policy behind the Act. Under these circumstances, we find it fundamentally unfair to deny [the treating doctor] an opportunity to explain his view of what happened. Left unchallanged, [the expert's] comments would have remained with the jury as the only testimony regarding the conversation between [the treating doctor] and [the deceased]." (*Hoem,* 159 Ill. 2d at 201-02, 636 N.E.2d at 483.)

Those words apply with equal force to the instant case.

While the goals of the Dead-Man's Act are to protect decedents' estates from fraudulent claims and to equalize the position of the parties in regard to the giving of testimony (*Fleming,* 85 Ill. App. 3d at 538, 406 N.E.2d at 883), "[t]he Act is not designed to disadvantage the living." (*In re Estate of Justus* (1993), 243 Ill. App. 3d 737, 740,

612 N.E.2d 89, 91, *appeal denied* (1993), 152 Ill. 2d 560, 622 N.E.2d 1207.) If we were to find that the Act bars the Harans' testimony in this case, however, we would be doing exactly that. In effect we would be finding that there is a rebuttable presumption that decedent gave the Harans $125,000 on the one hand, and then we would prevent them from rebutting the presumption on the other. We find the circuit court's barring of the Harans' testimony to have been an abuse of discretion.

Because there is room for disagreement in this area (see, for example, the dissent to this opinion) and because the Act generates so much controversy and litigation, many commentators have suggested that the time has come for the legislature to repeal or modify the Dead-Man's Act, as have more than half the States. (See, *e.g.*, Kahn, *Repeal of Dead Man's Act Advocated*, 55 Ill. B.J. 430 (1967); Barnard, *The Dead Man's Act Rears Its Ugly Head Again*, 72 Ill. B.J. 420 (1984); Barnard, *The Dead-Man's Act Is Alive and Well*, 83 Ill. B.J. 248 (1995).) For the reasons given, however, we conclude that the Act does not bar the Harans' testimony in this case.

## IV

The Estate's final contention is that the Harans failed to rebut the presumption of consideration. Because we reverse and remand on other grounds, and because at a new trial they will have a new opportunity to rebut the presumption, we need not reach this issue.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded for a new trial.*

McCORMICK, J., concurs.

JUSTICE HARTMAN, concurring in part and dissenting in part:
Because I would hold, on remand, the Harans should not be permitted to testify directly that decedent never gave them money in exchange for the promissory note, I respectfully dissent from that part of the majority's opinion which holds to the contrary. There are other methods available to defendants to prove their case, if such they have, without standing the Dead-Man's Act (Act) on its head, as the majority's disposition accomplishes.

Both *Hartman* and *Rerack*, discussed in the majority opinion, are entirely distinguishable from the instant facts. The "negative" testimony or "nonevent" in *Hartman*, that no other persons had an ownership interest in the motel, is not a distinct "happening" or "oc-

currence" that could have taken place in the "presence" of decedent. In contrast, the disputed fact in this case, whether or not decedent ever gave the Harans the money, is a distinct happening or occurrence which, if true, would have taken place in the presence of decedent. Similarly, in *Rerack*, the excluded testimony did not relate to an occurrence in the presence of decedent but to the condition of plaintiff's car or whether his foot was on the brake pedal, happenings or occurrences that did not take place in decedent's presence, who was occupying a different car.

In *In re Estate of Osborn* (1992), 234 Ill. App. 3d 651, 599 N.E.2d 1329, the court properly applied the Act, as this court should do in the instant case. There, two daughters, in a suit to contest the will of their deceased mother, filed affidavits asserting that decedent never discussed her will or estate during visits by the daughters at the hospital where she had been staying. The circuit court struck these statements as violative of the Act. In affirming, the appellate court stated: "a statement that a particular subject was never discussed violates the statutory prohibition against testifying to any conversation with the deceased." *Osborn*, 234 Ill. App. 3d at 659.

It is clear that where an executor sues a defendant to recover on a note, the defendant may not testify as to payments made to the deceased. (See *Karlos v. Pappas* (1954), 3 Ill. App. 2d 281, 121 N.E.2d 611 (abstract of opinion).) There is no valid reason to depart from this rule in this case, where the Harans claim that decedent never paid them the money. It is evidence decedent could have refuted if she had been alive to testify, and it relates to an event, or the absence of one, that would have taken place in her presence. The outcome the Harans seek, upon which the majority stamps its imprimatur, places the parties on unequal footing, a result precluded by the Act and one rejected by the court in *Osborn* and *Pappas*.

Numerous courts in other jurisdictions have similarly held, under comparable "Dead Man's" statutes, that testimony asserting the deceased did not do a certain act is equivalent, for the purposes of the Act, to testimony that he did that act. See, *e.g.*, *In re Estate of Mason v. Mason* (1986), 289 S.C. 273, 279-80, 346 S.E.2d 28, 33; *Bauer v. Riggs* (Tex. Ct. App. 1983), 649 S.W.2d 347, 350; *Stebnow v. Goss* (Fla. Dist. Ct. App. 1964), 165 So. 2d 251, 255 n.8; *Martin v. Shaen* (1946), 26 Wash. 2d 346, 351-54, 173 P.2d 968, 971-72.

None of the legal articles cited in the majority opinion discuss whether an interested party may testify to an event that did not occur in the presence of the deceased. Moreover, legal scholars do not unanimously favor the repeal of the Act. (See, *e.g.*, Hunter, *The Dead Man's Act Must Be Retained*, 55 Ill. B.J. 512

(1967).) Nevertheless, any action taken to repeal the Act must originate from the legislature, not from this court.

In sum, the law is irrefutable: testimony that one did not do a certain act is equivalent, for purposes of the Act, to testimony that he or she did the act and is prohibited.

Similarly, the majority's conclusion that the Estate waived the protection of the Act is unsupported by the evidence. This issue is raised and ruled on by the majority in this appeal; it was never raised by the parties in this appeal with good reason. Assuming, *arguendo*, that the issue of waiver was properly before the court, the majority has applied it erroneously here in order to achieve the result. The exception provides:

> "If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." Ill. Rev. Stat. 1985, ch. 110, par. 8—201(a) (now 735 ILCS 5/8—201(a) (West 1992)).

At trial in this case, the Estate introduced the Instrument into evidence during the testimony of Robert Smith. He testified that he and his two sisters discovered the Instrument and other valuables in decedent's wall safe about a month after she died. The Estate offered no other testimony describing, interpreting, translating or relating to the Instrument. As the Estate argued during the trial, it "assiduously avoided" offering further testimony so as not to open the door for rebuttal under section 8—201(a). The majority's ruling here allows the Harans to open the door themselves and to submit impermissible testimony.

The case relied upon by the majority, *Hoem v. Zia* (1994), 159 Ill. 2d 193, 636 N.E.2d 479, is clearly distinguishable and has no conceivable application to the instant situation. In *Hoem*, plaintiff's medical expert read to the jury the defendant doctor's medical notes, describing the deceased patient's complaints to the doctor and eventually rendering the opinion that the doctor should have recognized the fatal symptoms. The supreme court found that the expert was doing more than merely "interpreting" or "translating" the doctor's note for the benefit of the jury. (*Hoem*, 159 Ill. 2d at 201.) Instead, the expert put his "gloss on the notes," "insinuating" that the doctor should have treated the patient's complaints differently. (*Hoem*, 159 Ill. 2d at 201.) Because plaintiff was allowed to introduce her version of why the deceased visited the doctor, the supreme court understandably concluded that the doctor should have been permitted to explain

his view of what happened. (*Hoem*, 159 Ill. 2d at 202.) Nothing even remotely resembling the events in *Hoem* took place in the case at bar.

Here, the Estate offered no testimony or any other evidence to interpret or translate the contents of the Instrument, much less put its "gloss" upon it or "insinuate" anything beyond the bare instrument. Rather, the Estate simply laid the proper foundation and introduced the Instrument into evidence. The Harans were in no way disadvantaged, as the doctor would have been in *Hoem*, because neither side should be permitted to interpret the Instrument or present evidence regarding actions or nonactions relating to it.

The Act does not entirely preclude the Harans from defending or rebutting the presumption of consideration in the retrial of the case. They may, if they can, produce such evidence as income tax or bank records detailing their business ventures that they have entered into; a list of investors with whom they have joined, showing amounts contributed, which may demonstrate the omission of decedent, and convince the trier of fact that no deal was ever consummated between the parties; and bank deposits or withdrawals from both parties, which may shed some light on whether any funds were exchanged for the Instrument. Disinterested third parties, such as lawyers or accountants, involved in the proposed venture may similarly testify that the condominium project never commenced. The creative work of lawyers in the case can find additional evidence, which is not barred by the Act, to rebut the presumption of consideration. To sanction the Harans' direct testimony that no money was ever exchanged, however, clearly and impermissibly defeats the purposes of the Act and judicially repeals its provisions.