ROBERTA HARTMAN, as Ex'r of the Estate of Joseph Earl Winkler, Deceased, Plaintiff-Appellant, v. FRANK TOWNSEND, Defendant-Appellee.

Second District   No. 2—87—0457

Opinion filed May 4, 1988.

John A. Leemon, of Mount Carroll, for appellant.

Ronald F. Coplan, of Morrison, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Roberta Hartman, executor of the estate of Joseph Earl Winkler, brought suit against the defendant, Frank Townsend, seeking the return of $20,000 paid by the decedent to the defendant. Following a bench trial, the trial court entered judgment in favor of defendant. Plaintiff appeals.

On August 14, 1986, plaintiff filed an amended complaint which alleged that on or about September 20, 1982, the decedent obtained a cashier's check from the National Bank of Savanna in the amount of $10,000, made payable to the defendant. Decedent delivered the check to defendant, who cashed it and applied the proceeds to pay some of his debts. On or about October 5, 1982, decedent issued a personal check payable to the defendant also in the amount of $10,000 and delivered the check to defendant, who again used the proceeds to pay off some indebtedness. The complaint went on to allege that at the times these checks were delivered to defendant, the decedent was not indebted to defendant, that they had been acquainted only a short period of time, and that if the defendant were permitted to retain the monies paid to him by the decedent, the defendant would be unjustly enriched. Plaintiff sought recovery of the monies under a theory of implied contract.

Defendant filed an answer admitting the receipt and cashing of the checks. Defendant further admitted that decedent was not indebted to him, that he performed no services for the decedent, and that he was not related to the decedent. Defendant also admitted that the money was not a gift to him. However, defendant alleged that the money was a gift to defendant's wife, Mary Clarkson Townsend (Mary).

The relevant testimony at the bench trial was somewhat sparse

due in part to the prohibitions of the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201). What testimony there was is best set forth as follows.

Louis Corey testified for the plaintiff. He had known the decedent most of his life. Since his retirement, he purchased a home computer. In 1982 or 1983, decedent asked him to run several amortization schedules for him. After they had selected two, decedent asked him what his opinion was of the value of the Townsend Motel.

Plaintiff testified on her own behalf. As executor of her father's estate, she reviewed all of his bank statements back to 1979. The only withdrawals of sizable amounts were the two checks payable to the defendant. In 1982, while visiting plaintiff, decedent stated that he was working at the Townsend Motel because he was interested in buying it. In the fall of 1982, decedent accompanied her while she was looking to buy a new car. He stated that he too would like to purchase a new car but did not have the funds available to buy one due to a bad investment. After 1982, she observed her father working at the motel, putting skirting on mobile homes.

After the trial court denied defendant's motion for a directed finding, defendant testified on his own behalf. He is the sole owner of the Townsend Motel and has been so since he purchased it on April 1, 1977. Over objection, he testified that no other person had ever shared the ownership of the motel with him. He was married to Mary Clarkson in February 1985. Again over objection, he testified that Mary had lived with the decedent in Savanna, Illinois, but he was not sure for how long. He received the two checks described in plaintiff's complaint, both payable to him, from Mary Clarkson in 1982. One was a cashier's check and the other a personal check, both in the amount of $10,000. The proceeds of the checks were deposited into his personal checking account and used to pay bills.

Mary Clarkson Townsend testified on behalf of the defendant. She had lived with the defendant since 1982, and they were married in 1985. Over objection, she testified that prior to 1982, she had lived with the decedent in Savanna. She had known the decedent for seven or eight years and lived with him for four to five years. Counsel for the defendant then made an offer of proof in which Mary testified that while she had lived with the decedent, she had cooked and cleaned for him in addition to being employed as a cook in a diner. In August or September 1982, decedent told her that he wanted to give her $10,000. She instructed the decedent to have the check made out to the defendant. Decedent gave her a cashier's check in that amount, which she gave to defendant. Decedent told her that he wanted to

make sure she was taken care of in case anything happened to him. She received a second check in the same amount from the decedent, who told her that she should keep it for her grandchildren since she had given the other check to the defendant. However, she told decedent what she wanted to do with the money and asked him to make it payable to the defendant. That concluded the offer of proof.

John Morris testified on rebuttal. He had lived next door to decedent since July 1979. In October 1985, Morris had just purchased a new car. Decedent remarked that he would like to get a new car, but he couldn't because he had made a bad investment.

Mary Wolfe testified on rebuttal. She was decedent's sister. She stated that Mary Townsend and decedent lived together for less than a year.

Plaintiff testified on rebuttal that Mary Townsend and the decedent had lived together for less than a year.

The trial court entered judgment in favor of the defendant. The trial court found in pertinent part of the judgment order the following:

> "4. There is no evidence of any note, mortgage, deed, or contract that relates to the delivery of said checks. Further, that there is no indication that the decedent, during the 40 months which elapsed between the delivery of said checks and his death, ever sought repayment of any part of or all of the Twenty Thousand Dollars ($20,000.00) received by the defendant. Further, there is no evidence of any lack of mental or physical capacity on the part of the decedent at the time of the delivery of said checks or thereafter until his death, and there is no evidence of any threat or coercion on the part of the defendant or anyone on the part of the defendant. Further, that there is no evidence of a gift from the decedent to the defendant and there can be no presumption of a gift from the decedent to the defendant because of a lack of kinship between the two."

This appeal followed.

■■ ■ Plaintiff contends that the trial court made several erroneous rulings concerning the application of the Dead Man's Act to the present case. Specifically, plaintiff maintains that error occurred when the trial court allowed the defendant to testify that no other persons had shared in the ownership of the Townsend Motel with him since he had owned it and in allowing both Mary and the defendant to testify that Mary had lived with the decedent.

The Dead Man's Act provides in pertinent part as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." Ill. Rev. Stat. 1985, ch. 110, par. 8—201.

The question to be resolved here is whether the fact that defendant did not share ownership of the motel with anyone else, and the fact that Mary lived with the decedent, are "events" for purposes of the above statute. We note that neither party has provided this court with case law or other authority defining or otherwise interpreting the term "event" in this statutory context, nor does the statute itself provide such a definition.

Black's Law Dictionary 498 (5th ed. 1979) defines "event" as follows:

"The consequence of anything; the issue or outcome of an action as finally determined; that in which an action, operation, or series of operations, terminates. Noteworthy happening or occurrence. Something that happens.

Distinguished from an act in that an act is the product of the will whereas an event is an occurrence which takes place independent of the will such as an earthquake or flood."

In *Zorn v. Zorn* (1984), 126 Ill. App. 3d 258, the court was called upon to determine if testimony concerning a trip to a bank by a decedent and his children for the purposes of signing a deed was an "event" for purposes of the Dead Man's Act. After reviewing cases from other statutes defining the term "event," the court concluded that the term "event" included "all of the connected incidences and conversations leading up to the signing of the deed." *Zorn*, 126 Ill. App. 3d at 263.

Considering first the defendant's testimony that no other persons had an ownership interest in the Townsend Motel, we fail to see how this "negative" testimony was an "event" which took place in the presence of the decedent. Assuming, *arguendo*, that it was, it was plaintiff who elicited testimony from her own witnesses regarding decedent's interest in the Townsend Motel and the possibility that decedent was financially involved in it. It was therefore proper for the defendant to offer testimony confirming, denying, or otherwise explaining the fact of ownership. Ill. Rev. Stat. 1985, ch. 110, par. 8—201(b).

The testimony regarding the fact that Mary had resided with the decedent prior to her marriage to the defendant is more difficult to resolve. Plaintiff correctly points out that spouses of persons incompetent to testify are themselves incompetent to testify. (*In re Estate of Babcock* (1985), 105 Ill. 2d 267.) Nevertheless, based upon the above definitions of "event," we agree with the trial court that the fact that Mary resided with the decedent is not an event within the meaning of the Dead Man's Act. Admittedly perhaps the act of "moving in together" could be correctly termed an "event," but the continued relationship (which is the real issue here) over some period of time, as testified to by witnesses for both sides (despite disagreement about the actual time involved), is more of a "status" than a "happening" or an "occurrence." It was therefore not error to allow such testimony.

Next, we address plaintiff's contention that there was sufficient evidence establishing her right to recover the $20,000 from the defendant.

Plaintiff's theory of recovery as stated in her complaint is that of an implied contract. In *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 875, the court stated as follows:

> "A contract implied in law, also referred to as a quasi contract, differs from a contract implied in fact in that it exists from an implication of law that arises from the facts and circumstances, independent of an agreement or consent of the parties. [Citations.] A contract implied in law is equitable in its nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. [Citation.] Where there is an obligation or duty and a receipt of a benefit related to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay. This promise is fictitious and arises by implication of law wholly apart from usual rules relating to contracts. [Citation.]"

The action is said to be maintainable whenever one party has received money or its equivalent under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such benefit. (*Rutledge v. Housing Authority* (1980), 88 Ill. App. 3d 1064, 1069.) However, it is *unjust* enrichment which is to be avoided. (*Rutledge*, 88 Ill. App. 3d at 1069.) The *Rutledge* court noted that the Restatement of Restitution articulated this fundamental aspect of the doctrine:

> " 'c. *Unjust retention of benefit.* Even where a person has re-

ceived a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. *The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.'* " (Emphasis added.) *Rutledge v. Housing Authority* (1980), 88 Ill. App. 3d 1064, 1069, quoting Restatement of Restitution §1, comment *c* (1937).

■ Plaintiff maintains that we should overturn the judgment in favor of the defendant as it is against the manifest weight of the evidence. We are cognizant of the guidelines we must follow in making this decision. As stated in *Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 337:

> "It has long been the law in this State that it is within the province of the trial court to determine whether there has been sufficient evidence with which to determine either party's contentions. In the instant case the trial court heard the evidence, viewed the witnesses, had an opportunity to observe their demeanor and to judge from their appearance and actions the credibility of their words, and was thus in a better position to conclude the issues. The trial court's findings are presumed to be correct [citation], and this court will not set aside its findings and judgment unless the decision reached by it is against the manifest weight of the evidence. [Citations.]"

■ Plaintiff maintains that judgment should have been entered in favor of the estate on the basis of an admission in open court by defendant's attorney. On August 14, 1986, plaintiff filed an amended complaint. Paragraph 5 of the amended complaint alleged as follows:

> "5. That at the time of making each of said payments in the amount of $10,000.00 to the Defendant, Joseph Earl Winkler was not indebted to the defendant; and he had no obligation to the Defendant; that Joseph Earl Winkler and Defendant had only become acquainted with one another a short time prior to the making of the said Cashier's check in the amount of $10,000.00; and *that the Defendant is indebted to the Decedent's estate in the amount of $20,000.00.*" (Emphasis added.)

On September 15, 1986, defendant filed his answer to the amended complaint. In response to the allegations contained in paragraph 5 of the amended complaint, defendant stated:

> "5. Defendant admits that decedent was not indebted to the Defendant nor did he have any obligation to the Defendant personally. Defendant is unable to respond to the allegations which

relate to the length of decedent's acquaintance with Defendant in that he does not know what 'a short time' means in the context of this paragraph. *The defendant specifically denies that he is indebted to the decedent's estate.*" (Emphasis added.)

On April 3, 1987, defendant filed his response to a request to admit facts, *in which he admitted that the decedent was not making a gift to him of the $20,000.* Prior to trial, defendant's attorney withdrew, and new counsel substituted.

On April 16, 1987, prior to the commencement of the trial in this case, the following colloquy occurred:

"THE COURT: Is there an amended complaint?

MR COPLAN (defendant's new attorney): Yes, your Honor.

THE COURT: In Paragraph One, I am going to make a pencil notation on the complaint itself. Paragraph One is not denied?

MR. COPLAN: It is admitted, your Honor, yes.

THE COURT: And Paragraph Two?

MR. COPLAN: Admitted, your Honor.

THE COURT: Paragraph Three?

MR. COPLAN: That is admitted, your Honor.

THE COURT: Paragraph Four?

MR COPLAN: Admitted.

THE COURT: Paragraph Five?

MR. COPLAN: Admitted.

THE COURT: Paragraph Six?

MR. COPLAN: Denied.

THE COURT: Paragraph Seven?

MR. COPLAN: Denied.

THE COURT: Basically what we are going to deal with today is Paragraph six and we have narrowed the other issues. The response was filed on April 3, 1987. What it says basically is that he has admitted that Joseph Winkler made a gift to the Defendant with a cashier's check which has been identified as Exhibit A, but further states that said check reflects a gift made to the Defendant; is that correct?

MR. COPLAN: Correct, your Honor."

Paragraph 6 of the amended complaint alleged unjust enrichment and an implied contract to repay.

While plaintiff maintains that the above admission by defendant's attorney entitles her to a judgment in favor of the estate, we deem it most curious that neither the trial court nor the parties (at the time the admission was made) treated the admission as conclusive to plain-

tiff's right to prevail in this litigation. The case proceeded to hearing, and both parties presented their evidence. This argument was not raised any time before the trial court, and accordingly, it has been waived. *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787.

Based upon the above, we conclude that the decision of the trial court was not against the manifest weight of the evidence.

The judgment of the circuit court of Carroll County is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.