2022 IL App (2d) 200634-U
No. 2-20-0634
Order filed March 24, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ANDREW TANGEN and the VETERANS ASSISTANCE COMMISSION OF LAKE COUNTY, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) ) | |
| | ) | |
| v. | ) ) | No. 18-MR-1421 |
| | ) | |
| LAKE COUNTY, THE COUNTY BOARD OF LAKE COUNTY, LINDA PEDERSEN, DIANE HEWITT, TOM WEBER, BRENT PAXTON, JUDY MARTINI, JEFF WERFEL, STEVE CARLSON, BILL DURKIN, MARY ROSS-CUNNINGHAM, CHARLES BARTELS, PAUL FRANK, S. MICHAEL RUMMEL, SANDY HART, VANCE WYATT, CAROL CALABRESA, TERRY WILKE, MICHAEL DANFORTH, CRAIG TAYLOR, SIDNEY MATHIAS, ANN MAINE, in Their Official Capacities as Members of the Lake County Board, and AARON LAWLOR, in His Official Capacity as Chairman of the Lake County Board, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable Jacquelyn D. Melius, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hudson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Plaintiffs failed to show a clear right to *mandamus* relief concerning its requests for salary adjustments and new staffing. Plaintiffs' claims to recover office and furniture expenses from county were moot, and the circuit court correctly found that the county had discretion in setting the amount of its tax levy.

¶ 2    Plaintiffs, Andrew Tangen (Tangen) and the Veterans Assistance Commission (VAC) of Lake County, Illinois (plaintiffs), appeal the circuit court of Lake County's order resolving cross-motions for summary judgment in favor of defendants, Lake County, the County Board of Lake County, Linda Pedersen, Dianne Hewitt, Tom Weber, Brent Paxton, Judy Martini, Jeff Werfel, Steve Carlson, Bill Durkin, Mary Ross-Cunningham, Charles Bartels, Paul Frank, S. Michael Rummel, Sandy Hart, Vance Wyatt, Carol Calabresa, Terry Wilke, Michael Danforth, Craig Taylor, Sidney Mathias, Ann Maine, and Aaron Lawlor, the chairman of the Lake County Board (county), as to plaintiffs' request for a writ of *mandamus*. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4    We summarize the relevant facts from the record on appeal. On May 17, 2017, Tangen became the duly appointed superintendent of the VAC, a local government unit established under the Military Veterans Assistance Act (Act) (330 ILCS 45/0.01, *et seq.* (West 2020)). Among other things, the VAC provides the following services:

"[E]mergency financial assistance, available to all honorably discharged veterans of [Lake] County, including, but not limited to: rental and mortgage assistance; utility payments; aid to the medically indigent; assistance and emergency shelter to homeless veterans, those veterans in danger of becoming homeless, and those veterans displaced by natural disasters; and[] burial assistance of indigent veterans."

The parties agree that, pursuant to the Act, the VAC lacks authority to levy taxes or generate revenue. Instead, it receives its funding from the county. 330 ILCS 45/9(b) (West 2020). The

parties also agree that the county must approve any sums appropriated for the compensation of VAC officers and employees. *Id.* § 45/10 (West 2020).

¶ 5     After becoming superintendent of the VAC, Tangen began "reviewing plans, policies, and procedures and office staffing requirements" for the VAC. He sought to obtain a new office for VAC operations. According to Tangen, when he discussed his plans with "the [c]ounty administration," the county's administrator informed him that, if plaintiffs were to buy new furniture for the office, the county would cover the costs "out of capital." The county purportedly later informed Tangen that the money for the furniture would need to "come from" the plaintiffs' budget, forcing plaintiffs to pay for the furniture using their "Veterans Assistance funds."

¶ 6     Plaintiffs, through Tangen, also made several requests to the county board to address plaintiffs' compensation and staffing. Specifically, in 2018, plaintiffs requested the county to reclassify Tangen's paygrade as superintendent of the VAC, entitling him to a pay increase of $25,249 for the 2019 fiscal year. Plaintiffs also made other budgetary requests for the 2019 fiscal year, including approval to hire three new full-time veterans service officers (VSOs),[1] approval to increase the yearly salary for the VAC's assistant superintendent by $26,812, approval to reclassify the existing VSOs' paygrades to a higher slot, and approval to promote an existing VSO to a newly created position entitled, " 'Senior Veterans' Service Officer.' "

¶ 7     The county hired a consultant to conduct a salary study relating to plaintiffs' budget. The county also conducted its own internal study concerning plaintiffs' requests. On October 23, 2018,

---

[1] From our review of the record, it seems that the board did approve funding for an additional VSO position for the 2020 fiscal year. However, plaintiffs never amended their complaint to establish this fact.

the county denied plaintiffs' request for funds to create the new VSO positions. Instead, the county appropriated $39,972 for plaintiffs to hire a "[w]orkforce [d]evelopment intern" for the 2019 fiscal year. Plaintiffs rejected this offer. The county also increased Tangen's salary by $9,240, far short of plaintiffs' requested salary. Plaintiffs' remaining budgetary requests were denied in their entirety.

¶ 8    On November 19, 2018, plaintiffs filed their complaint for writ of *mandamus*. In December 2018, plaintiffs moved their offices to Gurnee. During the 2019 fiscal year, the county paid for plaintiffs' new office and furniture using funds from the county's VAC tax levy.

¶ 9    On January 21, 2020, plaintiffs amended their complaint for writ of *mandamus.* The amended complaint contained five counts. Count I alleged that the county violated section 10 of the Act (330 ILCS 45/10 (West 2020)) by "fail[ing] to compensate the plaintiffs' officers and employees in accordance with the [c]ounty's guidelines," and by failing to provide funds for plaintiffs to create the prospective "Senior Veterans Service Officer" position. Count II argued that the county violated section 10 by failing to provide plaintiffs with funding for the additional three VSOs. Count III alleged that the county "unlawfully usurp[ed]" plaintiffs' power to hire veterans, by "forc[ing]" plaintiffs to hire a workforce development intern. Count IV alleged that the county violated the Act by failing to provide plaintiffs with office space and furniture. Count V alleged that the county failed to "fund the VAC in accordance with the public aid code," in that the county "failed to levy[,] in accordance with the Illinois law[,] to adequately raise funds to support the Veterans and VAC of Lake County."

¶ 10    On April 13, 2020, the parties filed their cross-motions for summary judgment. On that date, the county also filed a statement of material facts—which was undisputed by plaintiffs— accompanying its motion for summary judgment. In its motion, the county relied on *Ickes v. Board*

*of Supervisors of Macon County*, 415 Ill. 557 (1953), to argue that all the disputed funding decisions implicated within plaintiffs' complaint involved the county's discretion, meaning that *mandamus* relief was inapposite. The county additionally argued that count IV of the amended complaint was moot, because the "[c]ounty paid, and has continued to pay, the rent for [plaintiffs'] new office" and for plaintiffs' new furniture.

¶ 11     Plaintiffs, in their motion, first referenced count V of the amended complaint by maintaining that the "minimum funding for a VAC is '.02[%] of the last known assessed value of the taxable property in the county,' " and that "[the county] has never funded the VAC at this minimum amount." Plaintiffs further argued that the "[c]ounty [a]rbitrarily [r]efused to [a]ppropriate [f]unds to [s]taff the [VAC]," and that *Ickes* was inapplicable, as it didn't analyze the Act, but instead, the Act's predecessor, the Indigent War Veterans Act (Ill. Rev. Stat. 1951, ch. 23, ¶¶ 154-154i).

¶ 12     On June 30, 2020, the court heard arguments on the parties' pending cross-motions. The county first argued that, although plaintiffs attempted to distinguish *Ickes* as outdated, the case remained relevant because the Indigent War Veterans Act was "simply the same act recodified." meaning *Ickes* remained good law. The county next argued that, because plaintiffs did not respond to the county's arguments about count IV, plaintiffs conceded the point and effectively abandoned their claims raised under that count. The county finally argued that Illinois law clearly rebutted plaintiffs' arguments as to count V, because the county had discretion in determining the amount of its tax levies, precluding *mandamus* relief.

¶ 13     After the county presented its arguments, plaintiffs first discussed count V, explaining that "[t]he language in the law is absolutely mandatory" that the county must fund the VAC at a rate of .02%. Plaintiffs then turned to section 2 of the Act, which it asserted was "important not only

in this argument dealing with [count V], but also salaries and number of personnel," because it required the county to provide plaintiffs with its requested funds.

¶ 14    While discussing their requests for additional compensation and personnel, plaintiffs argued that "the Act provides that[,] if guidelines are available, then they have to be used. *** The guidelines are, in fact, discretionary." Regardless, plaintiffs argued that, "when [the guidelines] are applied arbitrarily and capriciously, they no longer are a discretion [*sic*] function. At that point, it becomes where it is just and necessary, which is not discretionary, and allows [the circuit court] to look into it." Plaintiffs provided several reasons why it believed the county "arbitrarily and capriciously" applied its guidelines to plaintiffs' staff. For example, it suggested that the county's job descriptions for the subject VAC positions were "grossly inadequate."

¶ 15    Concerning count III, plaintiffs chastised the county for its perceived "arrogance" in providing plaintiffs with a workforce development intern in lieu of the requested supplementary VSO positions, arguing that the county's conduct violated section 10 of the Act. Plaintiffs next acknowledged that they had not previously responded to the county's arguments concerning count IV. Nonetheless, plaintiffs argued that they had authority "to maintain an office," and that such an office and other necessary supplies should be provided by the county. Plaintiffs acknowledged that the county did technically pay for these expenses, but nonetheless contended that the county unlawfully did so from "the [tax] levy that is allocated to the VAC," and "not from the [c]ounty."

¶ 16    After the parties presented their arguments, the circuit court asked plaintiffs, "I want to understand on [c]ount [IV], you have admitted that the [new office] lease is being paid and furniture is being paid for. Is there still an issue on [c]ount [IV] or is that moot at this point based on this?" Plaintiffs responded:

"The [c]ounty's position is that the funds in effect—right, they essentially can allocate money in a line item for furniture provided through the levy. Well, the way we read the law is that those funds should be coming from other [c]ounty funds, not funds that are levied for the VAC under [section 2006 of the Counties Code (Code) (55 ILCS 5/5-2006 (West 2020)]."

¶ 17    In issuing its ruling, the circuit court noted that, because plaintiffs did not respond to the county's statement of facts, "pursuant to local rules, all of the [county's] material facts [were] deemed admitted." Concerning count I, the court found that the "salary determinations for [plaintiffs'] employees [were] made based on *** [c]ounty guidelines," which "allow[ed] for discretion," meaning "*mandamus* does not lie." Additionally, although plaintiffs had earlier argued that "the [county's] setting of the salary [*sic*] was arbitrary," the court nonetheless found that "there is no evidence to support" such an inference.

¶ 18    Concerning counts II and III, the circuit court noted that section 2 of the Act "require[d] that the [c]ounty [b]oard provide sums of money as may be just and necessary," and that "[t]he statute does not say that the [c]ounty [b]oard must provide the funds recommended by [plaintiffs]." Because the Act presumably allowed the county to exercise discretion in determining the amount of funds to provide to plaintiffs, the court found that *mandamus* relief was inapplicable.

¶ 19    Concerning count IV, the court found that section 10 of the Act contained "no requirement set forth as to where the money [to provide for an office and supplies] must come from." Finally, concerning count V, the court found that Illinois statute gave the county discretion in setting the amount of its tax levy, meaning that *mandamus* was again inapplicable. For these reasons, the circuit court resolved the parties' cross-motions for summary judgment entirely in the county's favor.

¶ 20    Plaintiffs timely appeal.

¶ 21                                II. ANALYSIS

¶ 22    Plaintiffs raise five arguments on appeal. First, relying on section 2 of the Act, plaintiffs simply argue that "the trial court erred in not granting *mandamus*." Second, plaintiffs argue that "the county board does not have supremacy or primacy over the [VAC] in determining what constitutes mandatory and optional function." Third, plaintiffs argue that "the county board does not have supremacy or primacy over the [VAC] in determining benefits for veterans, including the just and necessary amounts and the number of qualified [VSOs]." Fourth, plaintiffs contend that "the county board does not have supremacy or primacy over the [VAC] in unilaterally establishing or changing salaries." Finally, plaintiffs argue that "the county board does not have supremacy or primacy over the [VAC] in determining how funds are to be expended."

¶ 23    Plaintiffs' argument sections—as laid out in their brief—generally do not seem to individually correspond to any one issue, legal theory, or count of their amended complaint. For the sake of clarity, we examine plaintiffs' arguments, as best we may ascertain them, in the context of each count of the amended complaint. We review the trial court's adjudication of cross-motions for summary judgment *de novo* and may affirm based on any ground supported by the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30; *Uncle Tom's, Inc. v. Lynn Plaza, LLC*, 2021 IL App (1st) 200205, ¶ 50.

¶ 24                                A. Forfeiture

¶ 25    Before turning to the merits, we first address the county's contentions concerning whether plaintiffs forfeited certain arguments on appeal. Specifically, the county argues that plaintiffs improperly argue points that were not initially raised before the circuit court, and that one other

argument should be deemed forfeited for lack of adequate development. We address these arguments in turn.

¶ 26                           1. Arguments not previously made

¶ 27    First, the county argues that plaintiffs improperly made the following arguments for the first time on appeal: 1) that, pursuant to count IV of the amended complaint, the county failed to provide plaintiffs with funds for its new office and furniture; 2) that the trial court erred by failing to appreciate the difference between "Class A funds" and "Class C funds" under section 3-11008 of the Code (55 ILCS 5/3-11008 (West 2020)); and 3) any arguments that the county "usurped" plaintiffs' authority  to carry out their functions.

¶ 28    A party may not present arguments on appeal that were not first raised in the trial court. *Hartman v. Townsend*, 169 Ill. App. 3d 111, 120 (1988). Where a party does raise an argument for the first time on appeal, the argument is forfeited. *Id.* Similarly, a party cannot preserve an argument by making it for the first time during a motion to reconsider. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36.

¶ 29    Concerning its first argument, the county acknowledges that plaintiffs did make arguments as to count IV before the trial court. However, the county contends that plaintiffs abandoned the count by failing to respond to the county's arguments in writing. According to the county, "[o]nly at oral argument *** did the plaintiffs finally make an argument on [c]ount IV," and reasons that "[t]his belated argument *** should be considered as having forfeited the claim." We disagree. By the county's own admission, plaintiffs actually argued count IV before the trial court, albeit inconsistently. The county also fails to provide authority to support its contention that plaintiffs' oral arguments cannot be considered as raising the issues in the trial court. Accordingly, the county's arguments are forfeited. Ill. S. Ct. R. 341(h)(7) and (i) (eff. Oct. 1, 2020)).

¶ 30    Next, we agree that plaintiffs forfeited any arguments concerning a distinction between "Class A funds" and "Class C funds" under section 3-11008 of the Code. Again, the county contends that plaintiffs failed to make this argument in the circuit court.

¶ 31    Plaintiffs respond, arguing that "[e]ven a cursory review of the record reveals that [p]laintiffs raised, argued, and cited cases distinguishing Class A and Class C funds. [Citations.] More tellingly, [the county] argued in the [t]rial [c]ourt that the cases relied on by [p]laintiffs, making that argument, should be ignored." Plaintiffs cite portions of the record purportedly establishing this line of reasoning and argue that, because the county ignores those portions of the record, the county's arguments are "disingenuous, frivolous, and, more importantly, contrary to the record." We disagree with plaintiffs. We have reviewed the record and find that plaintiffs never cited section 3-11008 to differentiate between "Class A" and "Class C" funds in the circuit court. Indeed, plaintiffs only raised an argument based on section 3-11008 in their motion to reconsider. Accordingly, the argument was not preserved for our review and is forfeited. *Evanston Insurance Co.*, 2014 IL 114271, ¶ 36.

¶ 32    Furthermore, to the extent plaintiffs cited cases discussing section 3-11008 prior to their motion to reconsider, we note that plaintiffs did not rely on them to advance the section 3-11008 arguments they now ask us to consider on appeal. To avoid forfeiture, Plaintiffs essentially argue that a citation to a case necessarily includes all of that case's reasoning and authority. In other words, the mere citation to a case, without more, operates to advance any conceivable issue addressed in the case regardless of whether a party develops the argument. Such a suggestion is nothing short of risible, and, unsurprisingly, no authority is offered in support of this position. Plaintiffs' arguments are forfeited and any arguments concerning Class A and Class C funds within the scope of section 3-11008 are forfeited. Ill. S. Ct. R. 341(h)(7).

¶ 33    Finally, we turn to the county's contention that plaintiffs have forfeited their arguments asserting that the county usurped their powers. As the county points out, many of plaintiffs' arguments on appeal are framed in terms of whether the county has "supremacy or primacy" over various VAC functions, and whether the county has tried to "usurp" those functions. The county argues that plaintiffs did not argue these points in the circuit court, except with regards to count III of the amended complaint. Consequently, the county reasons that any arguments concerning plaintiffs' "supremacy" or "primacy" for the remaining counts are forfeited. We disagree. Despite the somewhat inflammatory choice of language regarding "supremacy" and "primacy" that plaintiffs repeatedly use in framing their contentions, the substance of plaintiffs' arguments are essentially the same as those made in the trial court. Both in the trial court and on appeal, plaintiffs essentially argue that section 2 of the Act entitles them to a writ of *mandamus,* because the county denied their budget requests. Aside from any references to section 3-11008, plaintiffs' arguments in the circuit court and on appeal relied on the same legal theories. Consequently, the arguments are not forfeited. See *Hartman*, 169 Ill. App. 3d at 120.

¶ 34                              2. Arguments not developed on appeal

¶ 35    Next, we disagree with the county's arguments concerning plaintiffs' forfeiture of count V. "It has oft been repeated that a court of review 'is not a repository into which an appellant may foist the burden of argument and research.' " *Compass Group v. Illinois Workers' Compensation Comm'n*, 2014 IL App (2d) 121283WC, ¶ 33 (quoting *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37). Appellate courts are " 'entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented.' " *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 297, 297 (2010) (quoting *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1098 (2007)).

¶ 36     Here, the county argues that, while "[p]laintiffs' [c]ount V in their amended complaint claimed that the [c]ounty's VAC tax levy should be at 0.02% of the EAV of taxable property in Lake County," "now[,] on appeal, the plaintiffs devote little space to the issue and do not develop the argument."  In response, plaintiffs point to two separate portions of their brief demonstrating that "the issue [was] discussed extensively in [p]laintiffs' opening brief."

¶ 37     Turning to plaintiffs' brief, we note the following language that seems to correspond to count V:

> "Section 14-45 of the Property Tax Code [(35 ILCS 200/18/45 (West 2020))] directs the County Clerk to determine the rate per cent upon the equalized assessed valuation for the levy year that will produce "not less than" the amount the [c]ounty [b]oard authorized for the VAC in that particular year, an amount when added to the unobligated balance provided by the [c]ounty for VAC operations will equal 0.02% equalized assessed value. [Citations.] Thus, the minimum amount required by section 5/12-21.13 [of the Code] is the [c]ounty's unobligated balances from the prior tax year[,] subtracted by the amount of public aid provided to the [c]ounty, which determines the amount needed to be levied will equal 0.02%. [Citations.]"

> ***

> "The [c]ounty [b]oard[,] and, more importantly, the [t]rial [c]ourt misread the record, which is replete with unrebutted evidence that the [c]ounty does, indeed, receive [p]ublic [a]ssistance for other departments. [Citation.] Notwithstanding the unrebutted record evidence, the [t]rial [c]ourt erroneously found it to be 'the [c]ounty [b]oard's discretion to approve the amount of the tax levy to fund the [VAC] since the [c]ounty is

not receiving public assistance for veterans. [Citation.] The [t]rial [c]ourt erred as a matter of law because the law is to the contrary. [Citations.]"

¶ 38   Although these arguments do not explicitly reference count V of the amended complaint, they are essentially the same arguments that plaintiffs previously argued to support count V in the trial court.  As such, we reject the county's argument that plaintiffs failed to adequately develop their arguments as to count V. *Velocity Investments, LLC*, 397 Ill. App. 3d at 297.

¶ 39                                    B. Count I—Salary Changes

¶ 40   Having addressed the issue of forfeiture, we now turn to the merits. First, because plaintiffs failed to plead the requisite elements for *mandamus* relief in count I of the amended complaint, the trial court correctly resolved the count in the county's favor.

¶ 41   "*Mandamus* is an extraordinary remedy appropriate to enforce as a matter of public right the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986). In other words, *mandamus* is appropriate "only where the defendant has a clear duty to perform some act which he has failed or refused to do." *Butts v. Civil Service Comm'n of City of Aurora, Kane County*, 108 Ill. App. 2d 258, 263 (1969). Accordingly, a party seeking *mandamus* relief must establish the following: 1) a clear right to the requested relief; 2) a clear duty of the public official to act; and 3) clear authority allowing the public official to comply with the issuing court's writ. *Sharp v. Baldwin*, 2020 IL App (2d) 181004, ¶ 9. A party seeking *mandamus* relief must establish these elements by clear and convincing evidence. *Swick v. Bentley*, 308 Ill. App. 451, 456 (1941). Any facts in a petition for *mandamus* relief, along with any inferences resulting therefrom, should be taken as true. *Hanrahan v. Klincar*, 167 Ill. App. 3d 464, 470 (1988). "Anything less than strict and complete compliance

with all necessary and applicable provisions must result in the denial of the writ." *Long v. Elk Grove Village*, 64 Ill. App. 3d 1006, 1009 (1978).

¶ 42    Section 2 of the Act describes the manner in which a VAC should receive "assistance" from its respective county:

> "The supervisor of general assistance or the county board shall provide such sums of money as may be just and necessary to be drawn by *** the superintendent of any [VAC] of the county, upon the recommendation of the assistance committee of the *** [VAC]." 330 ILCS 45/2 (West 2020).

Section 2 also describes how a VAC may seek a writ of *mandamus* in order to compel a county to provide it with "just and necessary" funds for assistance:

> "If any supervisor of general assistance or county board fails or refuses after such recommendation to provide any just and necessary sums of money for such assistance, then the *** the superintendent of any [VAC] *** shall apply to the circuit court of the district or county for relief by *mandamus* upon the supervisor of general assistance or county board requiring him, her or it to pay, or to appropriate and pay such sums of money, and upon proof made of the justice and necessity of the claim, the circuit court shall grant such assistance."

¶ 43    Section 10 of the Act specifies:

> "The county board shall, in any county where a [VAC] is organized, in addition to sums appropriated for assistance and emergency assistance purposes under this Act, appropriate such additional sums, upon recommendation of the [VAC] and as approved by the county board, to properly compensate the officers and employees required to administer such assistance. Such county board approval shall be based upon recognized and

established salary guidelines developed by the county and used by the county to compensate county employees." 330 ILCS 45/10 (West 2020).

¶ 44 Pursuant to count I of plaintiffs' amended complaint, plaintiffs requested the circuit court to enter an order compelling the county to "fully fund the personnel recommendations of the VAC *at the appropriate salary levels*." (Emphasis added.) Plaintiffs further specified the classifications and corresponding salary amounts sought:

"Superintendent at the salary grade of M13 with pay of $170097.19, *** Assistant Superintendent at the pay grade of M12, $147,892.31, *** three (3) VSO positions at pay grade K8 entry level at $65,890.25, *** Senior VSO at the M11 25th percentile at $113,561.30."

¶ 45 Given this language, plaintiffs not only seek salary adjustments, but also seek reclassification of the subject staff members. Indeed, in their brief, plaintiffs argue that the trial court incorrectly found that "[plaintiffs] cannot challenge *** how the subjective guidelines were utilized." As such, to establish the first element for *mandamus* relief, plaintiffs needed to show not only a clear right to obtain their requested salary adjustments, but also a clear right to reclassification. However, no language in the complaint alleges a clear right to compel the county to reclassify their positions, and such a conclusion cannot be reasonably inferred from the facts plaintiffs present under count I of the amended complaint.

¶ 46 Arguably, by asserting that "[t]he [c]ounty has failed to compensate the VAC's officers and employees in accordance with the [c]ounty's guidelines," plaintiffs create the inference that they are entitled to higher compensation for the affected positions. Still, even if we were to interpret this argument to this effect, plaintiffs still fail to address or establish a clear right to reclassification.

¶ 47    In their motion for summary judgment, plaintiffs seemed to claim that section 2 of the Act established a clear right to their relief:

"Section 2 of the Act states that the VAC superintendent may seek a writ of *mandamus* when the County Board fails to appropriate just and necessary amounts for veterans['] benefits. Not just for salaries, not just for the operations, but for the amounts necessary for veterans."

Plaintiffs confirm this stance in their brief, arguing that:

"In the event that a county board denied the VAC's request for funding, of either [s]ection 2 or [s]ection 10 funds, [section 2] provides *a mechanism for relief*. Specifically, the superintendent of the VAC can circumvent the county board by filing a *mandamus* action requesting the court to order the county board to provide the VAC with the necessary funding."

Given this language, plaintiffs clearly argue that section 2 of the Act provides them with a clear right to relief. However, this was not the theory first leveled in plaintiffs' complaint, and a party cannot receive summary judgment based on a theory that was not pleaded in a complaint. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 373 Ill. App. 3d 895, 900 (2007).

¶ 48    Still, even if we were to accept plaintiffs' latest theory, their arguments lack merit. Again, to be entitled to *mandamus* relief, plaintiffs needed to show: 1) a clear right to the requested relief; 2) a clear duty of the public official to act; and 3) clear authority allowing the public official to comply with the issuing court's writ. *Sharp*, 2020 IL App (2d) 181004, ¶ 9. While section 2 does provide plaintiffs with the ability to *seek* a writ of *mandamus*, the section, by its own language, does not provide the first necessary element—a *clear right* to relief—unless plaintiffs first show "proof made of the justice and necessity of the[ir] claim." 330 ILCS 45/2 (West 2020). According

to our review of the record, plaintiffs never actually alleged that their salary requests were "just and necessary" as required by section 2, and they certainly did not demonstrate as much. Instead, plaintiffs provided statistics regarding the changing veteran population of the county, VAC staff salaries, county salary guidelines, and various changes to plaintiffs' budget over the years, and never explained *how* their contextless statistics render their requested salary changes as being "just and necessary." To this point, we will not use these statistics to cobble together a hypothetical argument concerning the necessity of the salary adjustments on plaintiffs' behalf. *Compass Group*, 2014 IL App (2d) 121283WC, ¶ 33.

¶ 49    Plaintiffs also reason that, because the county arbitrarily applied its pay guidelines to the subject VAC positions, plaintiffs' requested salary adjustments were just and necessary, meaning plaintiffs have a clear right to relief. Even if we were to find that such a conclusion could be inferred from the facts pleaded in plaintiffs' amended complaint—which we do not do—plaintiffs' reasoning is unavailing. An agency's action is "arbitrary and capricious" where the agency: 1) relies on factors that the legislature wished to preclude from consideration; 2) entirely fails to consider an important aspect of the subject problem; or 3) its explanation for its decision contradicts pertinent evidence or is "so implausible that it could not be described to a difference in view or the product of agency expertise." *M.F. Booker v. Board of Education of City of Chicago*, 2016 IL App (1st) 151151, ¶ 93.

¶ 50    Here, plaintiffs argue that the subject positions were arbitrarily slotted because the "initial slotting boil[ed] down to a 'judgment call.' " Plaintiffs further argue other facts that insinuate that the county's classification and salary decisions were arbitrary and capricious, such as record testimony establishing that the county "unilaterally reduced" the VSO positions to a lesser pay grade, evidence showing that Tangen is paid less than other county managers, the fact that "VSOs

who worked for other organizations within [the county] were ignored entirely," and because the county failed to compare plaintiffs' VSO salaries with VSOs working within the Illinois Department of Veterans' Affairs.[2]

¶ 51    Plaintiffs' arguments are meritless. Plaintiffs do not cite authority establishing or even suggesting that any of these facts are indicative of arbitrary action. Indeed, plaintiffs never even reference the various factors courts use to determine whether an action qualifies as "arbitrary." *M.F. Booker*, 2016 IL App (1st) 151151, ¶ 93. As such, plaintiffs' arguments are forfeited. Ill. S. Ct. R. 341(h)(7).

¶ 52    Regardless, in their statement of material facts, the county carefully described its "recognized and established salary guidelines that it uses in setting the salaries" of employees. The county described the methodology and factors it employed in setting its pay grades, which involved a comparison of different positions' pay with different collar counties. The county also alleged that it "used [these] recognized *** guidelines to set [plaintiffs'] employee salaries." We find that these facts, which plaintiffs effectively admitted, significantly cut against plaintiffs' contentions.

¶ 53    Because plaintiffs have thus failed to show a clear right to *mandamus* relief, plaintiffs have failed to plead the requisite elements for *mandamus* relief as a matter of law, rendering the parties' extensive discussions of discretion superfluous. Accordingly, the trial court correctly granted

---

[2] Plaintiffs also point to several different page ranges in the record in claiming that the circuit court "ignored the record evidence firmly demonstrating" an arbitrary application of the county's guidelines, but never specified what "record evidence" is being alluded to. We do not consider this record evidence, as plaintiffs essentially request that we comb through the record to form their arguments on their behalf. *Compass Group*, 2014 IL App (2d) 121283WC, ¶ 33.

summary judgment in favor of the county and against plaintiffs in count I. 735 ILCS 5/2-1005(c) (West 2020); *Falcon Funding, LLC v. City of Elgin*, 399 Ill. App. 3d 142, 159 (2010) (cross-motions for summary judgment were correctly adjudicated in the petitioner's favor where the respondent failed to plead requisite elements of claim).

¶ 54                                C. Count II—Additional Positions

¶ 55    Next, because plaintiffs similarly failed to show a clear right to create additional VAC staffing, the trial court correctly granted summary judgment to the county as to count II. Pursuant to count II of the amended complaint, plaintiffs requested the trial court to "order the [c]ounty *** to fund the [three] additional VSO positions that the VAC recommended." As such, to receive *mandamus* relief, plaintiffs needed to allege a clear right to have these positions created.

¶ 56    In their amended complaint, plaintiffs first point to section 10 of the Act, arguing that it "require[d] the County *** to 'appropriate such additional sums, upon recommendation of the [VAC] and as approved by the county board, to properly compensate the officers and employees required to administer such assistance.' " 330 ILCS 45/10 (West 2020). Plaintiffs argue that, by failing to fund plaintiffs' requests for the new VSO positions, "the [c]ounty has failed to comply with [this] statutory duty to appropriate funds recommended by the VAC."

¶ 57    However, plaintiffs' cited portion of section 10 does not establish a clear right to their requested relief—creation of the additional VSO positions. Instead, the language in section 10 that plaintiffs rely on deals with the process for funding the salaries of *existing* positions.

¶ 58    In arguing their motion for summary judgment, however, plaintiffs again emphasized that section 2 provided them with a right to their requested relief, because that section was "important not only in [their] argument dealing with [the tax levy], but also [regarding] salaries *and personnel*." (Emphasis added.) This new stance is confirmed in plaintiffs' brief.

¶ 59    Again, because this legal theory was not laid out in the amended complaint, plaintiffs cannot now rely upon it in showing a clear right to relief. *Steadfast Insurance Co.*, 373 Ill. App. 3d at 900. Nonetheless, our review of the record again establishes that plaintiffs did not plead the first necessary element for *mandamus* relief under section 2, because plaintiffs never actually alleged that the creation of the additional positions or the funds to support those positions were "just and necessary." 330 ILCS 45/2 (West 2020). Accordingly, plaintiffs have not pleaded a cause of action on which we may grant relief, and the trial court properly granted summary judgment in favor of the county and against plaintiffs.

¶ 60                            D. Count III—Authority to Hire Veterans

¶ 61    Next, because plaintiffs failed to plead the requisite elements for *mandamus* relief as to count III of the amended complaint, the circuit court correctly granted summary judgment in the county's favor on that count as well. As presented in plaintiffs' amended complaint, count III, which is entitled, "Unlawfully Usurp the Power of the VAC and Superintendent to Hire Veterans [*sic*]," plaintiffs argue that, by forcing an intern upon them in lieu of providing funding for the three additional VSO positions, the county unlawfully usurped plaintiffs' authority to hire veterans within the VAC. Accordingly, plaintiffs request an order compelling the county to "provide appropriate funding for the additional VSO positions."

¶ 62    In their amended complaint, plaintiffs give no reasons why this supposed usurpation of authority entitles them to funding for the additional VSO positions. For this reason, they have failed to allege the first necessary element for mandamus relief—clear entitlement to the sought-after remedy. *Sharp*, 2020 IL App (2d) 181004, ¶ 9. Additionally, even if plaintiffs did establish that the county's supposed mandate to hire an intern did somehow entitle them to the additional

VSO positions, the record rebuts plaintiffs' contentions that an intern was forced upon them. While issuing its decision on plaintiffs' motion to reconsider, the court asked plaintiffs:

> "In [c]ount [III] of your complaint[,] which alleges that the [c]ounty [b]oard unlawfully usurped the power of the VAC and Superintendent to hire veterans, [the county] said essentially that an offer was made that this [w]ork [f]orce [d]evelopment employee would be hired to fill a VSO position on a six-month trial period and you refused that. Is that accurate?"

Plaintiffs responded, "It is accurate, Judge. And it wasn't an offer. It was, you are going to take a [w]ork [f]orce [d]evelopment intern for six months and we'll hire." The court then asked, "And you said no to that? So that person never started at the VAC?" Plaintiffs responded, "Correct, your Honor." This exchange indicates that no intern was forced onto plaintiffs. Otherwise, plaintiffs could not refuse hiring the intern. Because no employee was ever forced onto the VAC, plaintiffs cannot successfully argue that the county usurped their authority by mandating them to hire the intern. As such, plaintiffs have again failed to establish any clear right to their requested relief. To this point, we also note that, in arguing that the county "forc[ed] the [w]orkforce [d]evelopment [i]ntern on the VAC," plaintiffs misrepresented pertinent facts to the circuit court. We admonish plaintiffs of litigants' duty "to be honest and forthright in all dealings before the court." *Semmens v. Semmens*, 77 Ill. App. 3d 936, 940 (1979).

¶ 63    Moving on, no allegations under count III involve any duty of the county, meaning plaintiffs also failed to establish the second requisite element of a claim for *mandamus* relief—a clear duty of a public official to act. *Id.* Finally, plaintiffs do not allege any facts concerning the final element for *mandamus* relief, clear authority allowing the public official to comply with the

2022 IL App (2d) 200634-U

prospective writ. *Id.* Accordingly, the circuit court correctly granted summary judgment in the county's favor and against plaintiffs as to count III.

¶ 64                         E. Count IV—New Office and Furniture

¶ 65    Next, because intervening events have rendered count IV of the amended complaint moot, the circuit court correctly granted summary judgment as to that count in the county's favor. The primary function of the courts is to decide controverted issues in adversarial proceedings. *Hill v. Murphy*, 14 Ill. App. 3d 668, 670 (1973). Thus, courts should not entertain moot cases that lack any live controversy. *Id.*

¶ 66    Here, in count IV of the amended complaint, plaintiffs allege that the county violated the Act by failing "to meet its obligation to provide office space at no charge to the VAC and furniture for the VAC." As a result of this violation, plaintiffs sought an order compelling the county to "provide office space at no charge to the VAC and furniture to the VAC for its office in Gurnee."

¶ 67    However, in the county's cross-motion for summary judgment, it points out that it "has provided [plaintiffs] with office space and new furniture, rendering [c]ount IV moot." Interestingly, the county also suggests that it paid these expenses for the 2019 fiscal year, long before plaintiffs filed their amended complaint, which, again, alleged that these expenses were never paid for. Regardless, plaintiffs failed to address the county's assertions until the parties argued their cross-motions for summary judgment before the trial court. At that time, plaintiffs finally admitted that the county did pay for its new office and furniture but suggested—for the first time—that the county unlawfully did so from "the [tax] levy that is allocated to the VAC," and "not from the [c]ounty."

¶ 68    Given plaintiffs' admissions that the county *did* pay for the new office space and furniture, we are again disturbed by plaintiffs repeated lack of candor to the circuit court, as represented by

plaintiffs' blatantly false allegations that "[t]he [c]ounty has failed to provide furniture for [plaintiffs'] office in Gurnee" or to "meet its obligation to provide office space at no charge to [plaintiffs]." *Semmens*, 77 Ill. App. 3d at 940.

¶ 69    At any rate, because "a party cannot seek summary judgment on a theory that was never pleaded in the complaint," plaintiffs are precluded from arguing as to the proper source of the county's funds. *Steadfast Insurance Co.*, 373 Ill. App. 3d at 900. Therefore, because plaintiffs have already admitted receiving the effectual relief requested for in its complaint—"office space at no charge to the VAC and furniture to the VAC"—count IV of the amended complaint is moot.

¶ 70    While count IV is resolved upon these grounds, we note that it makes no difference whether the county paid for these expenses via tax levy or another source. Because the VAC is unable to levy its own taxes, the levy funds originated from the county. See 330 ILCS 45/9(b) (West 2020). Otherwise put, the funds used for plaintiffs' office and furniture *were* expended by the county, as the county used funds that it levied for plaintiffs' new office space and furniture, as allowed by the Code. 55 ILCS 5/5-2006 (West 2020) (explaining that the county's VAC tax levy could be used "for the salaries or expenses of any officers or employees of the [VAC] *or for any other expenses incident to the administration of such assistance*") (Emphasis added.). Plaintiffs give no authority disputing as much, nor suggesting the proper, specific source of funding for a VAC's office accommodations.[3] For these reasons, the court correctly determined that the county was entitled to summary judgment as to count IV.

---

[3] In their reply, plaintiffs cite to *Makowicz v. Macon County*, 78 Ill. 2d 308, 310, for the proposition that "the Illinois Supreme Court *** determined that the [c]ounty must provide office space and furnishing from the [c]ounty's funds and not funds dedicated to assistance to [v]eterans."

¶ 71                        F. Count V—the Tax Levy

¶ 72    Finally, because the county has discretion in setting its own levels of taxation, the trial court correctly granted summary judgment in the county's favor as to count V. "Where performance of an official act involves the exercise of judgment or discretion, the act is not subject to review or control by *mandamus*." *Leo Michuda & Son Co. v. Metropolitan Sanitary District of Greater Chicago*, 97 Ill. App. 3d 340, 346 (1981). Furthermore, where there is any doubt that an official's actions may be subject to discretion, that doubt should be resolved against the party requesting *mandamus* relief. *People ex rel. Hamer v. Board of Education of School District No. 113*, 22 Ill. App. 3d 130, 136 (1974).

¶ 73    Pursuant to the Code:

> "The county board of each county having a population of less than 3 million in which there is a [VAC] as provided in Section 9 of the *** Act may levy a tax of not to exceed .03% of the assessed value annually on all taxable property of the county, for the purpose of providing assistance to military veterans and their families pursuant to [the] Act.

_____

Plaintiffs misrepresent *Makowicz*. There, our supreme court actually noted that, while a VAC makes recommendations as to how county funds should be expended, a county board has "general oversight" of any distribution of funds appropriated by the county for the benefit of veterans. *Id.* Plaintiffs' cited portion of *Makowicz* does not contain any argument as to the proper source of a VAC's office funds; it only provides that a county must provide a VAC with the necessary supplies to "maintain an office." *Id.* For a third time, we are troubled by plaintiffs' misrepresentations, which now seem to be directed towards this court.

*** 

If a county has levied the tax herein authorized or otherwise meets the conditions set out in Section 12-21.13 of 'the Illinois Public Aid Code' [(305 ILCS 5/1-1, *et seq.*(West 2020))], to qualify for State funds to supplement local funds for public purposes under Articles VI and VII of that Code *** the Illinois Department of Human Services shall allocate and pay to the county such additional sums as it determines to be necessary to meet the needs of assistance to military veterans and their families in the county." 55 ILCS 5/5-2006 (West 2020).

Pursuant to section 12-21.13 of the Public Aid Code, which is entitled "Local funds required to qualify for state aid:"

"To qualify for State funds to supplement local funds for public aid purposes, *** [i]n a county of less than 3 million population in which there is created a County [VAC], the county shall levy for assistance to military veterans and their families, within the time that such levy is authorized to be made, a tax of an amount which, when added to the unobligated balance available for such purpose at the close of the preceding fiscal year will equal .02% of the last known [EAV] of the taxable property in the county, or which will equal .03% of such assessed value if such higher amount is authorized by the electors of the county, as provided in Section 5-2006 of the Counties Code." 305 ILCS 5/12-21.13 (West 2020).

"[W]here different statutes touch on the same or related subject matter, we consider them together so as to render a harmonious result." *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 39.

¶ 74    Plaintiffs argue that section 12-21.13's language requires the county to levy a tax in the amount of .02 % EAV of all taxable property in the county. Because the county's current tax levy is far below this amount, plaintiffs argue that they are entitled to *mandamus* relief in the form of a writ compelling plaintiffs to levy the .02% EAV tax. In response, the county argues that section 12-21.13 only requires a .02% tax levy for counties seeking or receiving additional state aid to assist veterans. Because the county has not sought or received such state aid, it contends that that section 12-21.13 does not require it to institute a .02% EAV levy, meaning the circuit court correctly found that it had discretion in setting the levy. Plaintiffs seemingly do not dispute that its relied-upon language from section 12-21.13 only becomes operative only where a county receives state aid. Instead, they argue that the record "is replete with unrebutted evidence that the [c]ounty does, indeed, receive [p]ublic [a]ssistance for other departments."

¶ 75    Here, the circuit court correctly deduced that the county had discretion to determine the appropriate amount of its VAC tax levy. Again, pursuant to section 5-2006 of the Code, the county has discretion to levy a tax "not to exceed .03% of the assessed value annually on all taxable property of the county, for the purpose of providing assistance to military veterans and their families pursuant to [the] Act." 55 ILCS 5/5-2006 (West 2020). Because this language clearly provides the county with discretion in setting its tax levy, plaintiffs' claims as to count V fail unless plaintiffs can demonstrate that section 12-21.13 of the Public Aid Code is applicable.

¶ 76    Again, section 5-2006 references section 12-21.13, specifying that, if a county meets the conditions set out under "Article VII of th[e Public Aid] Code," which includes section 12-21.13, then the State "shall allocate and pay to the county such additional sums as it determines to be necessary *to meet the needs of assistance to military veterans and their families in the county.*" (Emphasis added.) *Id.* Therefore, reading sections 5-2006 and 12-21.13 in harmony with one

another, we are left with the conclusion that, if the county were to levy a .02% EAV tax for the VAC as provided for in section 12-21.13, it would be entitled to additional state funds for the express purpose "to meet the needs of assistance to military veterans and their families in the county," as established in section 5-2006. As such, to show that the county is obligated to levy the .02% EAV tax pursuant to section 12-21.13, plaintiffs must show that the county received state aid that was intended to be used "to meet the needs of assistance to military veterans and their families in the county" pursuant to section 5-2006. 305 ILCS 5/12-21.13 (West 2020); 55 ILCS 5/5-2006 (West 2020). Here, plaintiffs have not shown that the county received any state aid intended to assist veterans or their families. For this reason, section 12-21.13 is not applicable, and plaintiffs' arguments necessarily fail. 305 ILCS 5/12-21.13 (West 2020).

¶ 77    Nonetheless, plaintiffs cite to the deposition of Patrice Sutton, the county's finance director, in arguing the applicability of section 12-21.13. In the deposition, Sutton was questioned about certain payments made by the Illinois Department of Public Health (IDPH) to the county's health department. Sutton was unable to recall why those payments were made, providing that "[she] would guess that this is a grant that [the health department] received from [IDPH]." Sutton continued, "Alternatively, it might be services that they bill directly to the [IDPH] for [s]ervices to their patients." Sutton was also questioned about other payments to the county's health department from the Illinois Department of Human Services. Sutton explained that, to the best of her knowledge, those payments were reimbursements "for patients who qualify for public aid."

¶ 78    Plaintiffs suggest that Sutton's deposition proves that the county received state aid, and that, as a result, section 12-21.13 requires the county to levy the .02% EAV tax. However, as Sutton established in her deposition, the county did not receive these state funds pursuant to section 12-21.13. Instead, the disputed funds were either a grant, payments for past services already

rendered, or public aid reimbursements. None of these types of state aid are contemplated under section 12-21.13 (West 2020). Furthermore, section 5-2006 indicates that any public aid under section 12-21.13 originates from the Illinois Department of Human Services. 55 ILCS 5/5-2006 (West 2020). With this in mind, any payments originating from the IDPH could not create an obligation for the county to raise its tax levy under section 12-21.13. 330 ILCS 5/12-21.13 (West 2020). Again, it is clear that none of the funds referenced by Sutton were used to aid veterans, which, once more, indicates the inapplicability of section 12-21.13. *Id.*

¶ 79    As plaintiffs have failed to show that section 12-21.13 is applicable, the circuit court correctly found that the county had discretion to set the amount of its tax levy under section 5-2006. Therefore, regarding count V, the circuit court properly granted summary judgment in favor of the county and against plaintiffs.

¶ 80                                        III. CONCLUSION

¶ 81    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 82    Affirmed.